Dolan and Foy, *vs.* The Mayor & C. C. of Baltimore.—1846.

---

JAMES DOLAN AND PETER FOY, *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.—*December* 1846.

In June 1783, the owner in fee of a square of ground in the city of *Baltimore*, conveyed it to trustees to erect a *R. C.* church, and lay out a place of burial on the same, for the use of the *R. C.* of the said city. The deed declared, that if the trustees did not build, erect and complete the said church, and appropriate the residue of the square in laying out a burial

ground for the use of the said persons, then it should be void, and the reversion in the grantors. No church was erected on the lot; but a church was erected by the same society of christians, upon a lot in the neighborhood, and the square conveyed, was used exclusively as a place of sepulture. The corporation of *Baltimore* paved the streets adjacent to the square; claimed the cost thereof as a paving tax, and to sell the square, in consequence of its non payment for their re-imbursement, or that of the persons who had paved the streets. Upon a bill filed by the pastor of the church actually built, and by one of its congregation, who, with others of that church, and its persuasion, had used the square as a place of burial from 1783, hitherto, for an injunction to restrain the proposed sale for taxes. HELD, that neither of the complainants had any interest, legal or equitable, for the protection of which they could claim the interposition of a court of equity.

If the conditions of the deed have not been performed, the whole estate, legal and equitable, will have reverted to the heirs of the grantor, unless the heirs of the surviving trustee can allege and prove, in a court of equity, such positive agreement on the part of the grantor, or his heirs, or such specific acts of the parties, with distinct knowledge of the grantor, or his heirs, amounting to evidence of such an agreement as would entitle the claimants, by a bill for specific execution of such agreement, to a deed of conveyance, discharged of the condition so violated.

Trustees have no power to alter the nature and object of the deed appointing them, and under which they derived their powers, nor to dispense with the exact performance of the conditions imposed upon them : neither has a court of chancery such a power.

If a grantor is competent to make a conveyance, to the uses expressed in a deed, he is equally competent to provide for the restoration of the property to himself and his heirs, on the failure of the grantees to apply it to the purposes of the grant.

APPEAL from the Equity side of *Baltimore* county court.

*The Reverend James Dolan and Peter Foy*, on the 31st August 1846, filed their bill, alleging, that on the 23rd June 1783, *William Fell* conveyed in fee to *Thomas Russell, John Kirwan*, and *Robert Walsh*, as joint tenants, a square of ground in the city of *Baltimore*, in trust, to and for the use, behoof, benefit and advantage, of the *Roman Catholics* of *Baltimore town*, thereon to build, constitute and erect a church or chapel, and to lay out a burying ground, for the property and advantage of the said *Roman Catholics* of *Baltimore town;* that the said *R. W.* survived his co-trustees, and afterwards departed this life, leaving *R. W.*, his eldest son and heir at law, who

resides out of the State of *Maryland;* that *W. F.* hath also departed this life. The bill further alleged, that from the time of the execution and delivery of the deed hitherto, and with the knowledge, consent and approbation of the said *William Fell,* in his lifetime, and of the said trustees, during the lifetime of the said parties, respectively, the said lot of ground has *been used as a burial ground,* and only so used for the bodies of such persons, citizens of the said town, as died members of the *Catholic Church;* that the lot continues to be so used from time to time as occasion may require, and is used for no other purpose, and since the erection of *St. Patrick's Church,* the use of said burial ground has been confined to the congregation of that church; that *Peter Foy* was a resident of *Baltimore,* and a member of the *Catholic Church,* before and at the time, of the date of the deed, and still is so; that *James Dolan* is a priest of the *Catholic Church,* residing in said city, and pastor of *St. Patrick's Church* aforesaid; that confiding in said deed and in the intentions of the parties thereto, the said *Peter Foy* hath buried various members of his family in said ground, and said *James Dolan,* as pastor aforesaid, hath authorised and permitted many members of the *Catholic Church* to be there buried by their surviving friends; that shortly after the execution and delivery of the said deed, the members of the *Catholic Church,* residing in the eastern part of the said city, determined to build a church in which to worship, according to the faith and discipline of their church, and with the knowledge, consent and approbation of the said *R. W.,* survivor aforesaid, and with the knowledge, and without objection from the heirs of said *Fell,* who was then deceased, determined *to erect and build the said church on a lot of ground at the north-east corner of Bank and Market streets, Fell's Point, and to retain and use the said lot so conveyed by the said Fell to the said R., K. and W., as and for a burial ground for the congregation of said church; which church was afterwards so erected, and is still used by the said congregation, and is known as St. Patrick's Church.*

The bill further alleged, that in the year 1845, *The M. & C. C. of Baltimore,* in pursuance of the power and authority

vested in said corporation, determined upon the paving, and actually did pave, *Wolfe* street, along and in front of said burial ground, and for a considerable distance north of *Dulaney*, now *Baltimore*, street, and south of *Smith*, now *Lombard*, street; that said corporation and their collector of taxes have made claim upon the said lot of ground for its proportion of the costs of paving, and have threatened to enforce such pretended claim by a sale of the said burial ground; that as a burial ground, it is, and ought to be, exempt from such tax and claim, and all manner of taxation by said corporation. Prayer, to restrain the sale, for subpœna, and for injunction.

On the 31st August 1846, PURVIANCE, A. J., of *Baltimore* county court, ordered an injunction.

The appellees and their collector, answered the bill, and set forth the proceedings under which the paving was ordered to be done, and how this claim accrued; the non-payment of the paving tax, and the liability of the square therefor; that no distress remained upon the premises to pay the tax, and that the collector was about to sell for reimbursement, when the injunction was served upon him, &c. The answer admitted the deed of trust; that no church or chapel had been built thereon, and the use of the lot as a place of burial, by the *Roman Catholics* of *Baltimore;* that the heirs of *Fell* had permitted the use of the lot, as alleged; that there is now no person or corporation, who, as legally entitled to the said lot, could be sued at law.

The deed referred to, of June 1783, after conveying the legal estate, and describing the property as commencing at the northeast corner of *Wolf* and *Dulany* streets, as stated in the bill, declared it to be in trust—

"For the use, behoof, benefit, &c., of the *Roman Catholics* of *Baltimore town*, thereon to build, construct, and erect a church or chappel; and to lay out a burying ground for the property and advantage of the said *Roman Catholics* of *Baltimore*, and for no other use whatever; and that if the trustees, &c., do not build, erect, and complete the said church or chappel, on the land aforesaid, and appropriate the residue of the same in the laying out a burying ground for the intent and purpose of the *R. C.* of *B. town*, then and in such case, this indenture,

and every part thereof, shall be void, as if the same had never been made and executed, and the reversion and remainder of the land and premises hereby bargained and sold, to be and remain to the said *William Fell,* his heirs," &c.

The printed ordinances of the *City of Baltimore* were to be read at the hearing, by consent.

Upon a motion to dissolve the injunction, *Baltimore* county court, (Le Grand, A. J.,) delivered the following opinion :—

The question presented to the court for its decision, is embraced within very narrow limits. It is, whether grave yards are liable to the costs of paving streets on which they bind?

It is supposed they are exempted from charges of every description, imposed by the law of the State, and the ordinances of the city.

An examination of the various statutes of this State, discovers a uniform policy to exempt them from all public taxes; and the question is, whether this exemption operates as against the impositions of *Ordinance, No.* 47, entitled, " An ordinance to appoint city commissioners and port wardens, and to prescribe their duties?"

The 18th section of this ordinance provides, that " Whenever it shall be determined to pave any unpaved street, lane or alley, or part thereof, in the city of *Baltimore,* according to the acts of Assembly and the ordinances of the city, a tax shall be, and hereby is imposed, upon the owner or owners of property fronting or binding upon such street, lane or alley, on the part thereof to be paved, equal in amount to the whole expense of regulating, paving and collecting the same, except cross-streets; and it shall be the duty of the city commissioners, to assess and lay the said tax upon the owner or owners of property upon each side of such street, lane or alley, or the part thereof to be paved, at a rate of not less than six cents per square foot, including curbstones and gutters, of one-half of so much of such street, lane or alley, as may be in front of such property, except the part of such street, lane or alley, reserved by ordinance for footways. And the said tax shall be assessed and levied upon, and collected from, the owner or owners of said property; and the said tax shall be a lien on such property.

And in no case whatever, shall the city be made responsible for the paving done in compliance with the provisions of this section, and a clause to that effect shall be inserted in the contract to pave." *Revised Ordinances*, 1838, *p.* 120.

It has been admitted in argument, that the proprietors of a majority of the ground binding and fronting on the street, consented to its being paved, as required by the act of 1817, ch. 148.

The Court of Appeals, in the case of *The Mayor, &c., vs. Moore and Johnson*, 6 *Harr. and Johns.*, 375, and in the case of *The Mayor &c., vs. Howard*, 6 *H. & J.*, 383, have held, that it is competent for the mayor and city council of *Baltimore*, to pass an ordinance like the one previously quoted. This being so, it is clear, the grave yard sought to be held liable for the paving tax, would be so liable, unless there be something in the legislation of the State, to exempt it.

By the act of 1841, ch. 23, sec. 2, it is provided, that nothing therein contained "shall be construed, to authorise the assessment of, or levy of any tax upon, the property belonging to the *United States*, to this State, or to any county or city in this State; or to any incorporated literary, or charitable institution, county schools, houses of public worship, burying grounds," &c. If this act exempts burying grounds from the payment of a paving tax, it also exempts all the other property included in the exemption: such a construction cannot be maintained. The exemption extends only to the public tax, and not to a release of all liability for benefits conferred: such as in the opening or paving of streets. The State, nor the city, never designed by their legislation to impose on the latter, the payment of the costs of paving streets in front of literary institutions, &c., but merely to exempt them from contributing to the public revenue. The effect of such legislation was considered by the supreme court of *New York*, in the case of *The Mayor, &c., of New York, &c.*, 11 *Johns.*, 80. In that case it was sought to be maintained, that certain churches were exempt from all liability to contribute towards the payment of the expense of opening certain streets; and the exemption was claimed under a law, which provided, " That no real estate

belonging to any church, or place of public worship, &c., shall be taxed by any law of the State;" but the court unanimously held, that the words "taxes," meant burdens, charges, or impositions, put or set upon persons or property, for public uses; and that to pay for the opening of a street, in a ratio to the benefit or advantage derived from it, is no burden, "if as," said the court, "no talliage or tax, within the meaning of the exemption." So in the case now under consideration, the expense of paving the street is no tax, within the meaning of the exemption in the act of 1841, but a benefit for which the ground is liable. This view is in no wise in conflict with a recent decision of the city court, exempting certain churches from contributing to the expense of opening *Fayette* street. In that case, they were exempted by the express language of the act of Assembly, and the ordinance of the city providing for the opening of the street. It is no part of the duty of this court, to quarrel with the legislature of the State; or to inquire, whether the city ought to pay the expense of paving streets on which burying grounds bind? Its duty is, simply to ascertain what the State has done, and to give it due effect. If the legislation of the State and city is not in consonance with the feelings of the community, the General Assembly, and the City Council, must be appealed to, for the desired modification.

The motion to dissolve the injunction, must be sustained, and with costs.

The complainants appealed to this court.

The cause was argued before Dorsey, Chambers, Spence, Martin and Magruder, J.

By T. P. Scott and Miles, for the appellants, and By G. M. Gill and Presstman, for the appellees.

Dorsey, J., delivered his opinion as follows :—

Having assented to the affirmance of the order of the court below, dissolving the injunction issued in this case, for different reasons than those expressed in the opinion of this court, it is due to those from whom I differ, as well as to myself, that I should briefly state my views upon this subject. The gene-

ral power of the corporation of *Baltimore*, to charge the ordinary tax for the paving of streets on the adjoining lots, in front whereof the pavement has been made, was conceded in the argument of both parties; as well it might be, after the principle has been so fully settled by the decisions of this court. But it is insisted, that the lot in question is exempt from such a charge, because it has been appropriated as a site for a church and grave yard, for the *Roman Catholics* of the city of *Baltimore*. And to establish such an exemption, numerous acts of Assembly, imposing taxes, or burthens, have been referred to, in which the exemption of such property has been specifically provided for. So far from such acts of Assembly shewing a general exemption from such burthens, independently of legislative enactment, they form the strongest ground for the opposite conclusion; and assume the liability of such property, but for the special statutory exemption. I think, therefore, that the injunction issued in this case, ought to have been dissolved, because the lot of ground in question, was legally chargeable with the burthen attempted to be imposed upon it.

But suppose such legal liability be not so clear; and that it is a doubtful question of law, or that the legal exemption is clearly sustainable. What is the proper tribunal for the determination of such a question? Not a court of equity; but a court of law. There is no sufficient ground for the interposition of a court of equity, by way of injunction. By permitting the appellee to proceed in doing that, against which he has been enjoined, no irreparable injury or injustice is done to the appellant. If the property were liable to the charge, it was against law, equity, and conscience, for a court of equity to interfere to prevent its enforcement. If it were not liable, then no such injury would have been, by the acts enjoined, inflicted upon the appellants, or any body else, as would have warranted the interposition of a court of equity, by way of injunction. The contemplated sale for the payment of the paving tax, would have divested the owners of the lot of no right, legal or equitable. The purchaser at the sale must have sued in ejectment, to recover possession; and in that action he must have been defeated, if the paving tax were not legally

51    v. 4

charged upon the property. As an authority for this, if indeed an authority could be requisite to establish so plain a proposition, see *The Trustees of Louisville vs. Gwatheney and Grentsinger*, 1 *A. K. Marshall*, 554. Upon this ground, therefore, the order dissolving the injunction ought to be affirmed.

But I cannot assent to the affirmance of the order appealed from, upon the ground that the appellants have no standing in a court of equity, and for that reason, only, not entitled to the relief they seek. Such a proposition assumes, that *Robert Walsh, Jr.*, the heir at law of the surviving trustee, would be entitled to such an injunction as was issued in this case; that he had no interest in the lot of ground, but for the protection of the rights and interests of the *cestui que trusts*, the *Roman Catholics* of the city of *Baltimore*, is apparent upon the face of the conveyance. If then such a trustee refuse to exert the powers necessary for the protection of his *cestui que trusts ;* or be in a situation, as here, where he has not the means of doing so; should a court of equity deny all relief to an application of the *cestui que trusts;* on the ground that they cannot be heard in their own behalf, that they have no standing in a court of chancery? Nay, is it not a fundamental distinction between courts of law and courts of equity, that in the former, *cestui que trusts* cannot be parties, their rights not being recognised at law; but in the latter, they not only may, but must be parties, in all cases where their rights or interests are to be adjudicated? The appellants are *Roman Catholics* of the city of *Baltimore*. As such they are *cestui que trusts*, intended to be benefitted by the deed from *Fell*. If they have no standing in a court of equity, when seeking the protection of their rights, nobody else can have any. In respect to himself, the rights of the trustee are purely legal; and having no personal interest in the trust fund, he would have no pretence for claiming the interposition of a court of equity, but for the protection of the interests of his *cestui que trusts*. If for them he could seek it, they can seek it for themselves.

In the case before us, no question can arise as to the forfeiture of the estate conveyed, by a breach of the condition annexed to it. The heirs of *Fell*, only, and not strangers to

the deed, can take advantage, and claim the benefit of such a forfeiture.

CHAMBERS, J., delivered the opinion of this court.

The questions which relate to the merits of this case, involve considerations of the deepest interest to the feelings of the parties affected by the proceedings set forth in the bill.

The prospect of being called to witness the exposure to public sale of the mouldering remains of those who gave to us our being, or received theirs from us, is quite sufficient to call into exercise the warmest passions indulged by a community, of refined sensibilities. Reverence for the dead, must be the sentiment of all who can respect the living. And although the view taken by the court, will prevent them from expressing an opinion of the law, as applicable to the merits of the case, they will not consider it out of place to say, that they are fully convinced of the political and moral obligation of the constituted authorities, to protect the community over which they exercise jurisdiction, from the infliction of such injuries. They owe it to their citizens, as well upon the principle of "protection," against an act more calculated to destroy their happiness, than are many of the petty offences against which their enactments are properly directed, as also upon the principle of cultivating a sound state of social, moral, and religious character, which cannot be successfully attained by the precepts of schools and colleges, while their instructions are counteracted by the exhibition of spectacles which must shock, and ultimately weaken, the moral sense.

They owe it to the ashes of the dead. Instinct teaches the propriety of reverence for the dead, and the practice of all ages and people has conformed to its teaching.

The court however in the present case, have no other purpose in alluding to such considerations, than to invite the notice of the proper authorities to the subject, that they may exempt from sale, as well the temples set apart for the worship and service of that Almighty Being, whose we are, ourselves, and whose, is all we have, as also the ground consecrated to the undisturbed repose of the dead.

We propose to decide the case before us on its peculiar circumstances. The deed from *Fell*, is for the use "of the *Roman Catholics of Baltimore town*, thereon to build, constitute and erect, a church or chappel, and to lay out a burying ground for the property and advantage of the said *Roman Catholics of Baltimore town*, and for no other use," &c. And it is declared to be the true intent of the parties, "that if the said trustees, the survivor or survivors of them, or their assigns, do not build the said church or chappel on the land aforesaid, and appropriate the residue for a burial ground for the *Roman Catholics of Baltimore town*," then the deed is to be void, and "the reversion, and remainder, &c., to be and remain to the said *William Fell*, his heirs," &c. It cannot be doubted, that if it was competent to the grantor to make the conveyance to the uses expressed in the deed, it was equally competent to provide for a restoration of the property to himself or his heirs, on the failure of the grantees to apply it to the purposes of the grant. If the grantees could decline the execution of the trust, in one particular, they had equal authority to neglect it in another ; if they could fail to build the church, they had the same power to decline using the "residue of the land, as a burial place."

The bill, in fact, does allege an entire alteration in the use of the burial ground, as defined, in the deed, when it says, that since the erection of *St. Patrick's Church*—which is not on the granted premises,—"the use of said burial ground hath been confined to the congregation of that church."

As the foundation of title, the bill alleges, that the lot was used as a burial ground during the life of *Fell*, and with his knowledge, consent, and approbation, and with the knowledge and assent of the trustees, and that after the execution of the deed, "the members of the *Catholic Church* in the eastern part of the city," with the knowledge and consent of the surviving trustee, and with the knowledge of, and without objection from, "the heirs of *Fell*, did erect *St. Patrick's Church* on another lot," retaining the use of the lot so conveyed by *Fell*, as a burial ground, for the congregation of said church.

We cannot agree with the appellant's counsel, that any or all of these facts can give to the complainant, *Dolan*, as a priest of the *Catholic Church* in said city, and pastor of *St. Patrick's Church*, "or to the other complainant, *Peter Foy*, who claims as a resident of the city, and a member of the *Catholic Church*, before and at the time of the date of said deed, and ever since," and as having "buried in the said ground, members of his family, who were members of the *Catholic Church*, at the time of death," any interest, legal or equitable, to entitle them to claim the interposition of this court.

Objection was taken to the bill, for the systematic and uniform departure from the language of the deed, in describing the persons for whose use the property was intended. In every instance they are called in the deed *"Roman Catholics;"* in every instance they are called in the bill, *"Catholics,"* a designation which, if not common to every branch of the *Christian Church*, is certainly not exclusively applicable to the particular branch whose members claim under this deed.

We however waive this point, which might be the occasion of an amendment, and we waive also another, not alluded to in the argument, to wit, the sufficiency and certainty in the intended objects of the trust.

We do not think the appellants, or either of them, have any standing in a court of equity, which can entitle them to the interposition of its process. If the conditions of the deed have not been performed, the whole estate, legal and equitable, will have reverted to the heirs of the grantor, unless the heirs of the surviving trustee can allege, and prove in a court of equity, such positive agreement on the part of *Fell*, or his heirs; or such specific acts of the parties, with the distinct knowledge of the grantor, or his heirs, amounting to evidence of such an agreement, as would entitle the claimants, by a bill for specific execution of such agreement, to a deed of conveyance, discharged of the conditions so violated. There is no such agreement, there are no such facts alleged in this bill,—The trustees had no power to alter or change the na-

ture and object of the trust, or dispense with the exact performance of the condition; a court of chancery has no such power.   The owner of the property had the exclusive right to prescribe the terms of his grant, and in case of non-compliance with them, the grantees must suffer the just and inevitable consequences of their failure.   We do not mean to say, that title could be derived from *Fell*, or his heirs, in no other mode but by a formal deed, duly executed and recorded, to enable a court of equity to enforce rights acquired by their assent, but there is nothing set forth in the proceedings, which can be regarded as at all sufficient for that purpose.   The pastor of *St. Patrick's Church*, as such, has no right to, or control over, the property, by the terms of the deed; or by any appointment of the grantor, or his heirs, or even of the trustees.   Nor is the interest of the other appellant, in any view we can take of the subject, such as will entitle him to the proceeding which has been resorted to.

We are compelled therefore to affirm the decree of *Baltimore* county court, dissolving the injunction.

DECREE AFFIRMED.