GEORGE HOLLAND *vs.* THE MAYOR & CITY COUNCIL OF BALTIMORE, AND CHARLES HOWARD, Collector.

The *lessee* for ninety-nine years, or for ninety-nine years, renewable forever, and *not the owner of the fee*, is the *owner* or *"proprietor"* to *assent* to the *paving* of *unpaved* streets in the city of Baltimore, under the acts of 1797, ch. 54, sec. 2, and 1817, ch. 148, sec. 18; in the construction of these acts that of 1833, ch. 40, sec. 3, being in *pari materia*, ought to be adverted to.

Unless the owners of a majority of the feet fronting on the street to be paved, assent in writing to the paving, the proceedings of the city authorities, directing the paving to be done, are *null and void*, and a court of equity has, upon application of the non-assenting owners, *jurisdiction* to prevent, *by injunction*, the sale of their property to pay for such paving.

Where ample and perfect justice can be done, equity will interfere to prevent *multiplicity* of suits, and equity will not allow a title, otherwise clear, to be *clouded* by a claim which cannot be enforced either at law or in equity.

APPEAL from the Circuit Court for Baltimore city.

This appeal was taken from an order of the court below (KREBS, J.,) dissolving an injunction upon bill, answer and exhibits.

The bill, filed by the appellant, alleges, in substance, that the complainant is the owner of a lot fronting on Hollins alley, which has been advertised for sale by Charles Howard, the city collector, to pay a paving tax alleged to be due thereon, for the paving of said alley between Lombard and Pratt streets; that this tax is not due and payable by law, and that the proceedings of the city commissioners, in regard to said paving, are irregular, illegal and void, the application therefor never having been made or assented to, in writing, by the proprietors of a majority of the feet fronting on the alley to be paved, *because* George H. Steuart, who signed the application as owner of 195 feet, was not the true owner of but a part thereof within the intent and meaning of the acts of Assembly relating to the paving of streets in the city of Baltimore, he having, *prior* to the application, leased the larger part thereof for ninety-nine years, and the proceedings relating to the paving, therefore, created no liability in law upon the lot of the complainant;

that said paving tax is not a lien upon the lot, and the city collector has no authority to sell the same; that the contractors who did the paving withdrew from the city collector their bills therefor against the complainant, which had, under the ordinances of the city of Baltimore, been placed in the hands of said collector for collection, and at the time of such withdrawal the said contractors paid or secured to the collector the commissions on such bills due under the city ordinances, and that the collector afterwards levied a distress upon the goods and chattels to satisfy this tax, claiming authority for the same under the ordinances of the city; and that said goods and chattels were replevied, which replevin is still pending in the Court of Common Pleas; that in the contract for this paving there is a clause inserted that the city should not be responsible for the payment of the paving done under it, and that in consequence of this clause, and the aforementioned withdrawal, said tax ceased to be collectable as a public due or tax. The bill then prays for an injunction to restrain the city authorities and the collector from proceeding to sell the complainant's lot for this paving tax, and for general relief.

The injunction having been granted the defendants filed their answers. That of the Mayor & City Council insists, that the proceedings in relation to the paving of this alley were in compliance with the act of Assembly and city ordinances in such case made and provided, that the paving tax was legally assessed, and is a lien on the complainant's lot, and without admitting or denying the statements in the bill, further than to refer to the answer of Howard, the city collector, as containing the statement of facts which it is believed to be correct, submits to such decree as the court may think proper to pass.

The answer of Howard admits that the complainant is the owner of the lot referred to in his bill, and that the same was advertised for sale as alleged, but denies that the proceedings, in reference to the paving of this alley, are irregular, or that said tax was illegally assessed, but, on the contrary, insists, that the same is legal, and is a lien on the said lot, and that the decision of the city commissioner, as to the sufficiency of

Holland *vs.* Mayor & C. C. of Balto., *et al.*

the application to pave, is final and conclusive, and that a court of equity has no power to review his determination in a question of fact specially committed to him by the acts of Assembly and ordinances of the city. He also insists, that the complainant has been guilty of such *laches* as deprives him of a standing in this court, by waiting till the paving was done before he objected thereto, when he had notice of the application and determination to pave by the publication of the same in the newspapers; that the contractors made the contract and did the paving in good faith, and will suffer loss if this court shall now adjudge the proceedings illegal, because their contract releases the city from all responsibility for payment of said paving; that the facts alleged in the bill do not show such irreparable loss or damage as will give the court jurisdiction to interpose by way of injunction, and that the complainant has his remedy at law against the Mayor & City Council if the paving and assessments are illegal. He denies that the execution, by George H. Steuart, of the leases mentioned in the bill, deprived him of the ownership of the ground so leased, within the true meaning of the acts of Assembly in such case made and provided. He admits the distraint and replevin alleged in the bill, and insists that the ordinances of the city give him the additional remedy by sale, to which he has in this case resorted; and further states, also, that he is informed and believes, that the bills for paving, mentioned in the bill of complaint, were returned to his predecessor in office, and denies that the withdrawal and return altered the character of the same, and insists that they are still a public tax and collectable as such.

The facts appearing from the exhibits filed with the bill and answers are sufficiently stated in the opinion of this court. A motion was then made to dissolve the injunction, which was heard upon bill, answer and exhibits, and from the order of dissolution the complainant appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and BARTOL, J.

*Bernard Carter* and *J. M. Campbell* for the appellants, argued:

1st. That all the preliminary proceedings prescribed in the acts of Assembly and ordinances of the city, regulating the paving and repaving of streets, must appear to have been strictly complied with, otherwise, as to those proprietors who do not assent, the whole proceedings will be null and void, and impose no liability upon them for any portion of the paving tax. The most important of all these preliminaries, is the *assent, in writing,* of the owners of a *majority* of the feet of ground fronting and binding on the street, lane or alley to be paved. This assent is made the foundation of all proceedings relating to paving, and without it, they are all, including the tax, null and void. *Act of* 1817, *ch.* 148, *sec.* 18. 8 *Md. Rep.,* 352, *Henderson vs. Mayor & C. C. of Balto.* 4 *Hill,* 76, *Sharp vs. Speir.* 5 *Gill,* 383, *Alexander, et al., vs. Mayor & C. C. of Balto. Rev. Ord.* 1850, *No.* 15, *passed May 20th,* 1850.

2nd. That the lessor of a term for ninety-nine years, or for ninety-nine years, renewable forever, is not the owner or proprietor, for the purpose of assenting to the paving of a street, but that the lessee is, for this purpose, the only true owner or proprietor. This results from the true construction of the several acts of Assembly on this subject, all of which should be taken and considered as parts of one homogenous system, as well as from a consideration of the respective rights and obligations of the lessor and lessee of such terms, as they exist at common law. The right to *pave* is derived from the acts of 1797, ch. 54, sec. 2, and 1817, ch. 148, sec. 18, the latter of which requires the assent of the *"proprietors"* of a majority, &c. The act of 1833, ch. 40, relating to *repaving,* upon application made by the *"owners"* of two-thirds, &c., expressly provides, in its 3rd section, that the *lessee* of such a term "shall be deemed and taken as an *owner,* within the meaning of this act." Here is a legislative definition of the term *owner,* for such purposes, and these acts being in *pari materia,* they must be construed together, and the same definition applied to the equivalent term *"proprietor,"* in the former act. See, also,

*Ord. May 20th*, 1850, *No.* 11. *Rev. Ord.*, 1850, *sec.* 21. 5 *G. & J.*, 67, *Hughes vs. Young.* 2 *Paige*, 69, *Astor vs. Miller. Ibid.*, 434, *Gouveneur vs. Mayor & C. C. of New York.* If all the burdens are on the lessee, the right of determining whether those burdens shall be increased, should be with him alone. Chancellor Kent says, a long lease is considered a muniment of title, and equivalent in some respects to an estate in fee. 4 *Kent*, 86. The termor has been universally considered the owner, for all such purposes; the reversioner has nothing but a dry, *naked, legal title.* If, then, the lessee is the party to make the application, it is perfectly manifest, from the facts appearing on this record, that a *majority* of the proprietors never did assent to this paving; for, in order to make such *majority*, at least a portion of the feet leased by Geo. H. Stewart, must be included in the estimate.

3rd. That the collector having elected, out of the remedies given him by the ordinances for the collection of paving taxes, that by distress upon personal property, and a sufficient amount having been seized to satisfy this tax, he has no right to sell the lot for the *same* purpose, until he has first exhausted the personal property so seized. *Ord. May 20th*, 1850. *Rev. Ord.*, *No.* 11, secs. 21, 22, 29. 2 *Paige*, 434. 1 *H. & McH.*, 408, *Waters vs. Caton.* 4 *Johns. Rep.*, 407, *Olcott vs. Lilly.* 6 *J. J. Marshall*, 487, *Williams vs. Gill.* 6 *Md. Rep.*, 71, *Eschbach vs. Pitts.*

4th. That the bills having been *withdrawn* from the city collector, he had no power to sell; for he has only such power of sale *"where it is his duty to collect."* *Ord. No.* 11. *Rev. Ord.* 1850, *sec.* 31. The collector and his sureties cease to be liable for the collection of the bills so withdrawn, and it cannot be that a public officer can have power to collect, where he is not responsible for the *collection.* Nor can the *return* of the bills alter the case; for if the right to collect is once gone, it cannot be assumed again by the collector, of his own accord.

5th. If, upon any of these grounds, the proceedings were irregular, null and void, then the question remains, had a court of equity jurisdiction to restrain, by *injunction*, the city authorities from selling the lot, or collecting the tax? The

answer of the city does not take the objection to the *jurisdiction*, and, since the act of 1841, ch. 163, it cannot be raised in this court. But, even if the question is open, we still insist that the court had jurisdiction. The ground of this jurisdiction may be considered as this, that where public officers are vested with certain powers and authority to do certain things, and especially to take private property for public use, or to do any thing which could only lawfully be done by virtue of the authority given by the acts of the Legislature, and where the limits of their jurisdiction are marked out and defined by the act giving the authority, then a court of equity will interfere, by injunction, to restrain those invested with this authority from exceeding its limits, or doing any thing that affects the rights of private individuals, under color of their authority, if what is proposed to be done is not authorized by the act appointing and giving the power. This seems to be the result of the authorities. 1 *Bland,* 584, *Pascault vs. Commissioners of Balto.* 4 *Gill,* 402, *Dolan & Foy vs. Mayor & C. C. of Balto.* 1 *Eng. Railway & Canal Cases,* 101. 2 *Amer. Railway Cases,* 200, *Jordan vs. Phil., Balto. & Wil. Rail Road Co.* 4 *Mylne & Craig,* 17, 116, 120, 249, 255. 2 *Paige,* 434, *Gouveneur vs. Mayor & C. C. of New York.* 3 *Do.,* 573, *Champlin vs. Mayor & C. C. of New York.* 6 *Do.,* 83, *Mowhawk & Hudson Rail Road Co., vs. Artcher.* 13 *Barb.,* 567, *Christopher vs. Mayor & C. C. of New York.* 16 *Do.,* 392, *De Baun vs. Mayor & C. C. of New York.* 2 *Dow.,* 521, *Sthand vs. Henderson.* 8 *Gill,* 434, *Richardson vs. Mayor & C. C. of Balto.* 5 *Gill,* 383, *Alexander, et al., vs. Mayor & C. C. of Balto.* Again, courts of equity will interfere to prevent *multiplicity* of suits, and by injunction, in such cases also, to prevent a cloud being thrown over one's title. 2 *Story's Eq.,* sec. 955. 3 *How.,* 459, *Carroll vs. Stafford.* 5 *Paige,* 493, *Pettit vs. Shepherd.* 10 *Md. Rep.,* 418, *McCann vs. Taylor.*

6th. The complainant has been guilty of no such *laches* as will prevent him from availing himself of the aid of a court of equity. The parties doing the paving are bound to see that the proceedings are regular, and must take the consequences

if they are not. 8 *Md. Rep.*, 352, *Henderson vs. Mayor & C. C. of Balto.* There was no notice to him, either *actual* or *constructive*; nothing to show that he knew the paving was going on. Nor has he any remedy at law. The remedy by *certiorari* would not meet this case; for that writ would have only brought up the proceedings of the city authorities, and these would have shown, on their face, that to be true which the complainant alleges to be false, and he would have been bound by the *return*, and could not, under that writ, have shown that a *majority* of the owners did not assent.

*E. Wyatt Blanchard* for the appellees, argued:

1st. The court of equity had no jurisdiction, because the bill does not allege, nor do the facts show, that any real damage will be sustained by the complainant, but the prayer for relief is founded on the mere alleged irregularities of the city authorities, for the correction of which *certiorari* or *mandamus* is the appropriate remedy. 8 *Gill*, 150, *Swann, et al., vs. Mayor & C. C. of Cumberland.* 6 *Johns. Ch. Rep.*, 28, *Mooers vs. Smedley.* 4 *Do.*, 352, *Le Roy vs. Mayor & C. C. of New York.* There is no allegation that the trespass works irreparable mischief, which is essential to all such bills, and is contained in all the cases cited. It can make no difference that the defendant is a corporation; it matters not by whom the *wrong* is done; the *test* in the one case is the *charter* of the corporation, in the other the common law rights of *individuals;* the wrong is the same whether done by a corporation or an individual; it is still a *trespass* which equity will not interfere to restrain, unless to prevent irreparable mischief likely to result from it, or unless there be some circumstances of fraud or inequitable advantage taken, none of which are alleged in the bill or established by the facts set forth in it. 8 *Gill*, 433, *Richardson vs. Mayor & C. C. of Balto.* 9 *G. & J.*, 468, *Amelung vs. Seekamp.* 10 *Do.*, 358, *Fowler vs. Lee.* 6 *Gill*, 401, *Methodist Church vs. Mayor & C. C. of Balto.* 7 *Johns. Ch. Rep.*, 315, *Jerome vs. Ross.* 1 *Md. Rep.*, 535, *White vs. Flannigain.* 3 *Md. Rep.*, 480, *Ches. & Ohio Canal Co. vs. Young.* If the assessment is no lien,

as alleged in the bill, no title passes by the sale of the collector, and the complainant will sustain no injury, (8 *Gill*, 260, *Alexander vs. Walter*,) and if he pays the tax to save his property from sale, he can recover from the city if illegally collected, or can have his action for damages against the city authorities. 6 *G. & J.*, 298, *Ranahan vs. O'Neale*. 4 *Barb.*, 198. But if the assessment be collected by sale or otherwise the complainant sustains no injury, for the amount of the assessment is the equivalent for the benefit done his property by the paving, which benefit he now enjoys. The question of jurisdiction is distinctly raised in the answer of Howard, which is referred to and adopted by that of the Mayor and City Council.

2nd. The conduct of the complainant is a bar to the relief prayed. Having notice of the application to pave an alley binding on his property, he made no objection to the sufficiency of the application, though the same objections existed then. The application being, on its face, sufficient, and no one objecting to its sufficiency, the paviors contracted to do the work, and in their contract bound themselves not to hold the city responsible, but to look to the property holders for payment. The complainant looked on while his property was being improved at the expense of the paviors, and only applied for an injunction when required to pay his proportion of the cost of the improvement. 6 *Gill*, 391, *Methodist Church vs. Mayor & C. C. of Balto.* 1 *Md. Rep.*, 525, *White vs. Flannigain.* 9 *G. & J.*, 468, *Amelung vs. Seekamp.* 3 *Mylne & Craig*, 784, *Greenhalgh vs. Manchester & Birmingham Railway Co.* 6 *G. & J.*, 309, *Gott & Wilson vs. Carr.*

3rd. The application to pave was sufficient to give jurisdiction, and was in accordance with the requirements of the act of Assembly which requires *ownership*. It is not denied that General Steuart is an *owner*. The covenant of the lessee, which is relied on to show his exclusive right to sign, is a covenant to pay *public* dues and assessments. The paving tax is a matter of *private* interest—an assessment for a *private* benefit. The paving is done under authority derived from, and the tax is assessed upon property holders of, the particular

194    MARYLAND REPORTS.

Holland vs. Mayor & C. C. of Balto., et al.

locality, not upon the public at large. The tax is collected by virtue of a special authority, although there already existed the power to collect *public* taxes. *Ord. May 20th*, 1850, sec. 37. *Rev. Ord.*, 1850, *page* 34. 5 *Gill*, 383, *Alexander, et al. vs. Mayor & C. C. of Balto.* 4 *Hill*, 76, *Sharp vs. Speir*. 13 *Louisiana Rep.*, 320, *Municipality No. Two, vs. Curell, et al.* Besides, the record shows a contract between Steuart and his lessees cotemporaneous with the leases in which Steuart binds himself to pay for the paving to the amount of one dollar per front foot, and if it be true that the liability determines the right to sign the lessor was the only one entitled to sign the application, or the contract would be an ample authority from the lessees when coupled with the fact that they have never objected to his action.

4th. The collector has power to collect by distraint or sale without resort to the courts. His summary remedy against the personal property being rendered ineffectual by the act of the complainant, he has endeavored to collect the tax by the exercise of his power of sale of real property. The privilege of suing on a replevin bond is not a collection of a tax. *Act of* 1840, *ch.* 63. *Ord., May* 20, 1850. (*Rev. Ord.*, 1850, *page* 34,) secs. 7, 37.

5th. The paving tax is a lien from the moment of making the assessment. The withdrawal of the bills only relieves the collector and his sureties of their personal responsibility to the *contractor*, and cannot discharge the property from the liens. *Ord., May 20th*, 1850, sec. 37, *No.* 11. (*Rev. Ord.*, *page* 25.) 6 *Md. Rep.*, 71, *Eschbach vs. Pitts.*

Le Grand, C. J., delivered the opinion of this court.

This is an appeal from an order of the circuit court for Baltimore city, dissolving an injunction. The case may be thus stated: the appellant, at the time of the institution of proceedings, was the owner of a lot of ground on the east side of Hollins street, in the city of Baltimore. That street was paved, and a portion of the expense incurred was assessed against the appellant, who, refusing to pay it, a distress was levied, in the name of the Mayor & City Council of Baltimore, on the property found

on the premises. The appellant sued out a writ of replevin, and, subsequently, filed the bill in this case, to restrain the further proceedings of the appellees to collect the amount alleged to be due by him for the paving in front of his lot. There is no question in regard to the fact of the paving having been done, nor is there any as to the ownership by the appellant of the lot, for the paving in front of which he has been sought to be charged. These facts are conceded. Without stating circumstances which were relied upon in the argument, but which, in our opinion, have nothing to do with the decision of this case, we will advert to the grounds on which rests the equity set up in the bill. They are these: Holland and Cassard, owners of lots binding on the street, did not sign a recommendation to the city commissioner of the city of Baltimore, asking that the street might be paved. Gen. George H. Steuart signed, with others, a recommendation that the street be paved, and signed as the owner of 195 feet fronting on the street, when it is conceded by the admissions of counsel, and established by the proof in the case, that, with the exception of 90 feet, he was not the absolute owner of any of the lots for the paving in front of which he signed; he having leased 105 feet of them for terms of 99 years, renewable forever. If he had no right to represent the 105 feet which had been leased, then there was not a majority of the feet fronting on the street recommended to be paved by those who had the right or authority to do so, and, as matter of necessary consequence, the city authorities had no power to direct the paving of the street. It is a matter of mathematical ascertainment how many feet there are binding on a street within a given distance, and, in this case, it is not only shown by the enumeration of the feet of the several lots fronting on the street, but admitted, that if Gen. Steuart had not the right to represent the 105 feet leased for ninety-nine years, there were not a majority of the feet represented by those who alone had the right to do so.

By the act of 1833, chapter 40, section 1, the Mayor and City Council of Baltimore, on the recommendation of the owners of two-thirds of the feet fronting on any street, were empowered to order that it be repaved; and by the 3rd section

of the same act it is provided, "that a tenant for ninety-nine years, or for ninety-nine years, renewable forever, and the executors or administrators of such tenant, shall be deemed and taken as an owner, within the meaning of this act." By the act of 1840, ch. 63, it is enacted, that the Mayor and City Council should have full power and authority to provide, by ordinance or otherwise, for the prompt collection of taxes due the city, and, to that end, to sell real as well as personal property.

It will be perceived, that by the language of the act of 1833, the authority conferred, *in words*, is only to *repave*. But, by the ordinance of the Mayor and City Council of Baltimore, of May 20th, 1850, it is provided, that whenever the city commissioner shall receive an application, in writing, for *paving* to be done in any unpaved street, or any part of such street, from the proprietors of the *majority* of the feet of ground binding and fronting on such street, or the part thereof to be paved, it shall be the duty of such commissioner, &c., &c.

Although the authority of the corporation to pave an unpaved street, is not derived from the act of 1833, but conferred by those of 1797, ch. 54, and 1817, ch. 148, yet, in the construction of the two earlier acts, that of 1833 ought to be adverted to as being in *pari materia;* and the definition of the word "owner," occurring therein, should be taken as the correct one, as applicable to it, or its synonyme, "proprietor," when either appears in the other acts, in relation to paving.

It was conceded, at the bar, that a majority of the feet must be represented, to give the authority. In this case, if Gen. Steuart had not the authority to speak for 195 feet, as he did, then there was no power in the corporation, or its commissioner, to direct the paving alluded to in the proceedings; and that he had no such authority, is manifest from the language of the act of 1833, which, in express terms, designates the lessee for ninety-nine years, or for ninety-nine years, renewable forever, as the "owner." Gen. Steuart could only act to the extent of the 90 feet, in which he retained an absolute fee-simple.

This being so, the only remaining inquiry is, will equity re-

lieve in such a case against an attempt to enforce payment by a sale, where no debt is due? We entertain no doubt on the question. There are several principles recognized in courts of equity which cover the case, among which is, that (where ample and perfect justice can be done) equity will interfere to prevent multiplicity of suits; and, again, that equity will not allow a title, otherwise clear, to be clouded by a claim which cannot be enforced either in law or equity. These are principles of universal application. The idea that a party ought to stand by and see his property illegally exposed to public sale, and then force the purchaser to bring his ejectment to gain possession, or to try his title, seems to be sustained by no good authority. Such a doctrine would not only encourage circuity of action and multiplicity of suits, but render the title of the real owner comparatively valueless, while the suits at law should be pending. We have shown that there is not the slightest claim, under the acts of Assembly and ordinances of the city of Baltimore, against the property of the appellant, for the paving done in front of his lot, and it would be strange, indeed, if a court of equity had no right to interpose, in his behalf, to save him from an annoying, protracted and expensive litigation in the courts of law. But such is not the law, and the following (without referring to others) are authorities abundantly clear on the point; *McCann vs. Taylor, et al.,* 10 *Md. Rep.,* 418. 2 *Story's Eq.,* sec. 955, a. The case of *Dolan & Foy, vs. Mayor & C. C. of Balto.,* 4 *Gill,* 402, recognized, substantially, the jurisdiction of equity in a case similar to the present.

We shall reverse the order of the circuit court, dissolving the injunction, and pass one making it perpetual.

*Order reversed, and injunction made perpetual.*

In the case of *George and Lewis Cassard, vs. The Mayor and City Council of Baltimore, and Charles Howard, Collector,* the facts were the same as in the above case, except that there was no *distress* levied upon personal property, and having

been argued at the same time, LE GRAND, C. J., delivered the opinion of this court.

For the reasons assigned in the opinion in the case of *Holland vs. Mayor and City Council of Baltimore,* we reverse the order in this case, and make the injunction perpetual.