# MICHAEL JENKINS *vs.* MARIA G. HORWITZ.

*Construction of a Devise to a Wife Upon Conditions Subsequent.*

By his will, executed in 1877, a testator devised a dwelling-house in the city of Baltimore to his wife, "upon these conditions, first, that she continues to reside in the city of Baltimore, and secondly, that she does not marry again before April 10, 1885." By a codicil made in 1886 the testator directed that the devisee of a tract of land not in said city should provide a home thereon for his wife in case she should desire it. The testator died in 1887. *Held*, that the limitation as to time contained in the devise to the wife was intended to apply to both of the conditions of the devise ; that her estate became absolute after the expiration of the time mentioned, and that she is now authorized to alien the property free from any condition.

Appeal from a *pro forma* decree of the Circuit Court No. 2, of Baltimore City. The testator, Orville Horwitz, died in August, 1887. The contract for the sale of the property mentioned in the proceedings, for the sum of $25,000 in fee, to the appellant, was made in June, 1900.

The cause was submitted to the Court on briefs by :

*Barton*, *Wilmer*, *Ambler* and *Stewart* for the appellant :

The sole and narrow question in the case is whether or not the requirement of continued residence in the city of Baltimore is a valid and effective condition. The appellee insists that the condition, if not actually illegal, is too vague and uncertain to be enforced, while the appellant, though desirous of getting the property, apprehends that the condition contravenes no principle of law or public policy, and is sufficiently definite to be valid and binding.

The condition is not unlawful or repugnant to the estate granted. Generally speaking, a testator is permitted to make his bounty depend on whatever conditions he thinks proper; but the law does not authorize him to do that which is impossible or contrary to reason. He cannot attach to his gift

an incompatible condition. For example, as absolute owner-ship involves the right to deal with property as the owner pleases, a testator cannot give land absolutely, and at the same time add a condition that it shall be enjoyed only in a particu-lar way. *Smith* v. *Clark*, 10 Md. 187; *Stansbury* v. *Hubner*, 73 Md. 228.

The condition is confined to Mrs. Horwitz. alone and ends with her life. A familiar instance of a similar condition is that in restraint of a *second* marriage, which has so frequently been upheld. *Gough* v. *Manning*, 26 Md. 347; *Clark* v. *Ten-nison*, 33 Md. 85; *Benesch* v. *Clark*, 49 Md. 497; *Bostick* v. *Blades*, 59 Md. 231; *Wood* v. *Conrey*, 62 Md. 542.

A closer illustration is perhaps afforded by the cases holding that a devise or bequest may be made dependent upon the condition that the devisee or legatee should withdraw from the priesthood, or membership of an order or society connected with the church, or refrain from forming such connection. *Mitchell* v. *Mitchell*, 18 Md. 405; *Barnum* v. *Baltimore*, 62 Md. 291. Manifestly in such case it cannot be determined until the death of the devisee that he has "refrained from forming such connection," and the remaining outside of the church seems exactly analogous to continuing to reside in a given place, unless it be considered that " residence " in a particular place is less definite and more difficult of ascertainment than " connection " with a religious order.

In *Beach on Wills*, sec. 239, it is said: "A condition that the devisee shall reside on the property devised is valid." In *Doe* v. *Hawke*, 2 East, 281, which was decided in 1802, the testator devised his farm to one nephew, " but not to dispose of or sell the tenant right to another person, and if he refuses to dwell there himself or keep in his own possession," then to another nephew. The devisee deposited his title deeds with one creditor as security for a loan and suffered judgment in favor of another creditor, who issued execution. The secured creditor bought at the execution sale and entered into posses-sion. Thereupon the second nephew sued in ejectment and recovered judgment on the ground that the condition had

been broken and the land forfeited. · It was not once suggested that the condition was for any reason invalid or inoperative. The sole question was whether or not the deposit of the title deeds, etc., constituted a breach.

In *McLaren* v. *Stainton*, 4 Jur. (N. S.) 199, decided in 1858, the testator devised his house to trustees, desiring the use and enjoyment to be offered rent free to his eldest child for the time being so long as he or she should please, and in case of refusal or ceasing to occupy, then to be offered to the other children in succession. It was held that personal occupancy was required, although this might be satisfied by keeping a servant there, with occasional occupation.

In *Dunne* v. *Dunne*, 7 DeG., M. & G. 207 (1855), the devise was to a married woman for life, with remainder to her son for life, and then to his sons, etc., with the proviso that the person or persons entitled to possession should, with " his or their " family, while " he or they " should continue so entitled, reside at the mansion-house and make it " his or their " principal place of abode ; and it was held that the proviso as to residence applied to the married woman, and was sufficiently distinct to create a forfeiture on her refusing to reside there after she became a widow. In *Stone* v. *Parker*, 29 L. J. Ch. 874 (1860), the testator devised his dwelling-house and some other property to trustees, to permit his widow to occupy and enjoy the same during life rent free, if she remained a widow, and upon her death or if she should marry again or refuse to occupy, then the trustees to sell ; and it was held that the widow could not lease, but must occupy to avoid a forfeiture. In *Wynne* v. *Fletcher*, 24 Beav. 430 (1857), Sir John Romilly held valid a condition requiring the devisee to make the mansion " his usual and common place of abode and residence."

It has several times been held that the requirement of residence for a designated period, as, for instance, six months in every year is a valid and enforceable condition. *Walcott* v. *Botfield*, 1 Kay, 545 ; *Warner* v. *Moir*, 25 Ch. Div. 605.

If the contention of the appellee is correct, then, notwithstanding the express provision of her husband's will, Mrs.

Horwitz could, if she had chosen, have left Baltimore on the day of his funeral with the avowed purpose of making her permanent home elsewhere, and yet have claimed that this house belonged to her absolutely. If it be granted—and of this there can be no doubt—that a testator has the right to impose any condition that would have the effect of restraining alienation during a single life, that would seem to dispose of the objection that this property is "tied up" until the death of Mrs. Horwitz. If it be conceded that residence for six months is a fact so clear and definite that it can readily be ascertained, it is difficult to perceive why any doubt or uncertainty should arise from making the period longer. It must always be practicable at any given period of Mrs. Horwitz's life to determine whether or not she continues to reside in the city of Baltimore. Under our laws too many rights and remedies are dependent on residence for this Court to be expected now to declare that residence is a thing incapable of ascertainment.

*Harry M. Benzinger* for the appellee :

The appellee contends that the conditions in said will should be read as if they had been written as follows : " Upon these conditions : First, that she continues to reside in the said city of Baltimore *before the 10th day of April, 1885;* and secondly, that she does not marry again before the 10th day of April, 1885," thus taking distributively the words " before the 10th day of April (1885) eighteen hundred and eighty-five," as applicable to the condition prescribing her continued residence in Baltimore city, as well as to the one requiring her to refrain from marrying again. In making this construction we avoid many objections to the will itself in creating the condition of continued residence in Baltimore city, which it can hardly be supposed that the testator ever contemplated could by any possibility arise.

The construction of the clause presented by the appellant make the condition illegal and impossible. The testator was a resident of Baltimore *County;* consequently that was the legal domicile of Mrs. Horwitz until his death, and it was impossible in contemplation of law for her to reside elsewhere.

Vagueness as to the time during which the property given to Mrs. Horwitz by her husband's will would be placed *extra commercium,* by reason of the uncertain duration of her life (for, according to the argument of the appellant, she could do absolutely nothing with this property except dispose of it by will, or lease it during her life and reside elsewhere in Baltimore city, or occupy the same), is a strong and pregnant argument against this condition.   The property was given to her in fee, and such a limitation upon the right of alienation would be repugnant to the estate given and void.   Its indirect effect limits the ordinary and essential rights of the owner and should not be upheld.   *Stansbury* v. *Hubner,* 73 Md. 228; *Smith* v. *Clark,* 10 Md. 187; *Warner* v. *Rice,* 66 Md. 436.

What, indeed, do the words " continue to reside " mean? The word " residence " has various meanings, according to the purpose and object with which it is used.   We have argued that what it means in this case is illegal, but the appellant has shown in his brief, by the citation of numerous authorities, that different meanings could be attributed to this word. Would, then, it be possible for a Court to specifically enforce a contract requiring a person to continue to reside in a given place or house, with no other qualifying circumstances or facts added; would the Court hold that a person was only required to claim residence at that place while traveling abroad ; would the Court hold that keeping up an establishment in the given locality, though actually living elsewhere, sufficiently gratified the meaning of the words " to reside ?"   Would not the Court say, as did the Court in *Tillingham* v. *Bromley,* T. & R. 630, that the words were too vague to constitute a clear condition upon which a Court could find there had been a forfeiture, and in which case it decreed specific performance of a contract of sale notwithstanding its vague condition ?   *Wolcott* v. *Batfield,* 1 Kay. 534; *Marion* v. *Moir,* 53 L. J. Eq. 474.

The words of the condition are strictly words of condition, coupled with *no limitation over,* and do not create a *conditional limitation,* but make a *condition subsequent,* for the estate in the lands and the property in the chattels is vested in the donee, and

only to be defeated upon breach of the condition.  It is not a gift of an estate to the widow, provided at the time and before it becomes vested in her she shall have continued to reside in Baltimore city until the 10th day of April, 1885, and shall have refrained from marrying up to said date; but it is an absolute gift of the fee coupled with the condition that would defeat it if operative.  The legal effect of a condition subsequent, without a limitation over, is not *per se* to defeat the estate.  *Binnerman* v. *Weaver*, 8 Md. 517; *Bostick* v. *Blades*, 59 Md. 231; *Gough* v. *Manning*, 26 Md. 347.

PAGE, J., delivered the opinion of the Court:

This is a proceeding to enforce the specific performance of a contract whereby the appellee agreed to sell to the appellant a certain house and lot in the city of Baltimore.  The appellant refuses to perform, alleging as a cause therefor that the appellee "has not and cannot convey a fee-simple title to the property."

The controversy involves the construction of the first article of the last will of the late Orville Horwitz, which is in the words following, viz.:

"Art. 1. I give, devise and bequeath to my wife Maria, my dwelling-house, at the northwest corner of Charles and Centre streets, in the city of Baltimore, and all my household furniture and plate therein contained.  Also, all my carriages and horses, to her, her heirs, executors, administrators and assigns forever; but upon these conditions, first, that she continues to reside in the said city of Baltimore; and secondly, that she does not marry again before the 10th day of April, 1885; and the provision in this article, contained for my said wife, I make and give in addition to and over and above her thirds in my personal estate and her dower in my real estate."  Mrs. Horwitz, not having remarried, the second of these provisions is no longer operative, and we have now to deal only with the first.

It is clear that by the terms of this devise an estate in fee vested immediately in the devisee, liable, however, to be

divested upon the non-performance of the conditions if opera-
tive.   The language of the testator is very explicit ; he devises
to his wife, ''her heirs, executors, administrators and assigns
forever.''   The conditions also are such as may or must be
performed after the vesting of the estate, and are therefore
conditions subsequent.   *Finley* v. *King's Lessee*, 3 Peters, 346;
*In re Stickney's Will*, 85 Md. 103.   Moreover, there is no de-
vise over in case of a forfeiture, and nothing in the will to. in-
dicate that the testator intended that in such an event it should
pass to the residuary legatees.   The entire will shows that the
testator, having divided his estate among the several objects of
his bounty, did not contemplate that any of the dispositions he
made would fail, or that in case of failure he desired that the
parts of his estate so affected should fall into the *residuum* of
his estate and pass to the residuary devisees.   There is not
" the slightest ground for any reasonable implication, having
respect to the real intention of the testator, as gathered from
the face of the will, that the real estate in question was in fact
intended to pass under the residuary clause.''   *Rizer* v. *Perry*,
58 Md. 122 and 138.   The effect of this clause, therefore, was
to vest in Mrs. Horwitz a fee liable to be defeated by the non-
performance of the conditions, if operative ; and there being
no devise over, in case of a forfeiture, the estate would pass
to the heirs at law of the testator and not to the residuary de-
visees under the will.   *Gray* v. *Blanchard*, 8 Pick. 284; *Jack-
son* v. *Tapping*, 1 Wend. 388; *Dolan* v. *M. & C. C. of Balto.*,
4 Gill, 394.

In arriving at the testator's meaning of the condition, with
which we are to deal, we have had some difficulty.   It is cer-
tainly impossible, without the most cogent reasons therefor,
to suppose that the testator intended by the conditions to com-
pel his widow to abide, under all circumstances, in the city of
Baltimore, during the entire period of her life, or otherwise
forfeit her estate.   And yet if the condition respecting her
residence be regarded as unaffected by the limitation of time
mentioned later on in the article such might be the result.
The words "continue to reside" are of large import.   It would

not be impossible to hold, if unexplained or unqualified by other terms, that they set up requirements far more comprehensive than those which would define a residence for voting purposes, or that which would indicate the jurisdiction in which a person could be sued. Nor is there anything in the terms of the condition or in the will to justify the contention that the purpose was to impose upon Mrs. Horwitz the same conditions as to residence "as that on which the State allows one to become a candidate for any office within the gift of the people," as was contended by the counsel for the appellant. When the entire instrument is examined we think it will clearly appear that the testator did not intend to place such restrictions upon his widow. The devise is made in terms that cannot be misunderstood. They grant to Mrs. Horwitz a present vested estate in fee. In the same article the testator employs words that may be taken to express, in some measure at least, the reasons that were then in his mind. He says, " the provision in this article contained for my said wife, I make and give in addition to and over and above her thirds in my personal estate and her dower in my real estate." It is clear, therefore, that he desired to make a liberal provision for her ; and it was because of that, lest her thirds in his property to which the law would entitle her would not be adequate to furnish her with such appliances of comfort and of luxury as he was solicitous she should have at her command, that he devised in addition to what she would receive under the law, the mansion-house, together with all its contents and his carriages and horses. Why, under these circumstances, should he require as a condition upon which she should enjoy his bounty that she should reside, not in the house devised, but in the city of Baltimore? We have been pointed to no motive that would account for a purpose so peculiar on his part ; there is none shown in the will, and we are unable to conceive of any ourselves.

In the light of these considerations, we are of the opinion that a careful consideration of the condition when read in connection with the context in which it is found, and with other

provisions of the instrument, will enable us to arrive at a conclusion more in harmony with the probable intentions of the testator, who was well known in his day as an experienced and most skillful lawyer.

The will was made, as its date shows, on the 28th day of May, 1877. The conditions contained in the first article are, " first, that she continues to reside in the city of Baltimore, and secondly, that she does not marry again before the 10th day of April, 1885." Did the testator intend that this date should be applicable to both conditions, or only to the first ? Why should he intend it to apply only to the second ? If his widow married again before April, 1885, why should he be concerned where she resided after that date. It cannot be presumed that in case of her remarriage he should then be solicitous that she (and presumably) her husband should reside in Baltimore. The only reasons we can find therefore, for the use of the time limitation would seem to apply as well to the one condition as to the other. Why shall it not be so applied ? The phraseology makes it entirely reasonable to do so ; and by so construing the conditions, we avoid many of the insuperable difficulties we have pointed out in some measure, in what we have already said. If the limitation as to time be applied distributively, as we think it must be, the first condition would import no more than that she must continue to reside in the city of Baltimore up to April, 1885, a date at which the testator was still living.

That this is a proper construction of the meaning of this condition, not only accords with the probabilities as to the testator's intention, but we are of opinion affirmatively appears from a fact found in another part of the will. By the ninth article the testator devised his country seat, Woodmont, to his daughter Louisa. In this article no mention is made of his wife ; indeed, except that she is appointed one of the executors, her name is not mentioned in the will after the first article. Subsequently, having sold Woodmont, he made a codicil by which he devised to Louisa, in lieu of Woodmont, his country seat, called Cloud Capp'd, "lately purchased of

Robert Taylor, Jr., trustee, &c." That codicil, as appears from its date, was made on the 22nd day of December, 1886, or more than a year after the expiration of the time mentioned in the first article. Therein the testator used these words, of course in connection with the devise of Cloud Capp'd, a place located not in Baltimore city, but on the Frederick road, in Baltimore County, viz.: " I request that my said daughter Louisa, will allow her mother to have a home on said place whenever she may so desire." These words demonstrate that at the time of the making the codicil, or more than a year after the expiration of the date mentioned in the first article, the testator did not regard the condition as to residence operative so as to require his widow to reside in the city of Baltimore. This is clear, because in this codicil the testator contemplates that she might, if she chose, reside elsewhere, and requests that if, in the exercise of her preferences, she should desire to " have a home " in Baltimore County, at Cloud Capp'd, his daughter " will always allow " it. In the will, by the ninth clause, which contained the devise of Woodmont, there was no request that the widow should have a home there. It is significant that he should have inserted it in the codicil, one year after the time-limit of the first article, had expired. It indicates that the testator at the time of the making of the codicil regarded the conditions which he imposed upon the devise to his widow as no longer in force, the period having expired during which they were to be effective.

We are of opinion, therefore, that by a proper construction of the first article of this will, the estate of the appellee has become absolute, and she may now alien the same free of any conditions.

The decree of the Court must therefore be affirmed.

*Decree affirmed.*

(Decided November 22, 1900.)