THE MAYOR AND CITY COUNCIL of BALTIMORE, AND
the CITY COLLECTOR *vs.* THE GRAND LODGE OF
MARYLAND OF THE INDEPENDENT ORDER OF ODD
FELLOWS.

*Notice of Application to the Mayor, &c. to Open and condemn
a street in the City of Baltimore, required before passing an
Ordinance for such purpose—Such Notice a Condition prece-
dent to the Validity of the Ordinance—Particular Ordinance
void, not being in Substantial conformity with the Notice
given—Jurisdiction of a Court of Equity to Restrain the
Enforcement of a Void ordinance for Opening a street—
Acquiescence and Laches.*

The Legislature whilst conferring (Art. 4, secs. 837, 838, of the Code of Pub.
Local Laws,) upon the Mayor and City Council of Baltimore, power to pro-
vide for laying out, opening, extending, widening, straightening, or closing
up in whole, or in part, any street, square, lane or alley within the limits of
the City, provided, that before the Mayor and City Council should pass any
ordinance in exercise of this power, at least sixty days notice should be given
of any application for the passage of such ordinance, in at least two of the
daily newspapers in said city. HELD :

That such notice was a condition precedent to the valid exercise of the power
in any given case, and any ordinance which did not substantially conform
to the notice would be inoperative and void.

A notice as required by sec. 838 of Art. 4 of the Code of Public Local Laws,
was as follows : "Notice is hereby given that application will be made to
the Mayor and City Council of Baltimore, to open and condemn Lexington
street from *Holliday* to Douglas street." The ordinance purporting to have
been passed in pursuance of this notice, was entitled, "An ordinance to con-
demn and open Lexington street eastward from *Gay Street*, so as to make it
intersect the present western terminus of Douglas street, and to change the
name of Douglas street to Lexington street," and its first section directed

Mayor and City Council of Balt., *et al. vs.* Grand Lodge of I. O. O. F.

the Street Commissioners "to condemn and open Lexington street, east-wardly from *Gay Street*, so as to make it intersect the present western terminus of Douglas street, as laid down and delineated on a plat of said opening recently made by " the city surveyor, as follows, and then the limits and bounds of this opening and extension were described. In another section the name of Douglas street was changed to Lexington street. The opening and extension contemplated by the notice was to be from *Holliday Street*, and to continue Lexington street from that point to Douglas street. The ordinance provided that the condemnation and opening should commence at *Gay Street* and extend to Douglas street, and nothing more. HELD:

1st. That the difference between what the notice stated was contemplated and would be applied for, and what the ordinance actually authorized and directed to be done, was material and essential.

2nd. That the ordinance not being in substantial conformity with the notice, was inoperative and void.

Where the city collector of Baltimore is about to advertise and sell property assessed under a void ordinance for benefits for the opening of a street, a Court of equity has jurisdiction, upon the application of the property holder, to restrain by injunction the enforcement of the ordinance.

An ordinance for condemning and opening Lexington street in the city of Baltimore was passed on the 30th of September 1872. On the 6th of July, 1875, a bill was filed, which averred that the Street Commissioners proceeded under the ordinance and assessed the complainant's property for benefits and rendered it a bill therefor; and that on the 25th of June, 1875, the city collector caused a notice to be published, notifying all persons in arrears for benefits assessed for the opening of Lexington street, that payment must be made on or before the 30th day of that month, otherwise the property of delinquents would be placed in the hands of the City Surveyor to plat, preparatory to advertising for sale. The bill also charged that the ordinance and all proceedings thereunder were void. The bill prayed for an injunction to restrain the Mayor and City Council of Baltimore and the City Collector from proceeding to enforce the assessment for benefits upon the property of the complainant. The answer of the Mayor and City Council averred that in due course the final return of all their proceedings was made by the Street Commissioners to the City Register on the 23rd of June, 1874, and due notice given to the complainant thereof, and of the assessment for benefits made on its property, and of its right to appeal therefrom to the City Court, and that the complainant failed to appeal therefrom, and at the time of filing its bill the time within which such an appeal might have been taken had long before expired. HELD:

Mayor and City Council of Balt., *et al.* *vs.* Grand Lodge of I. O. O. F.

That the complainant had not lost his right to proceed in equity, by acquiescence and laches.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed on the 6th of July, 1875, by the appellee, to obtain an injunction to prevent the appellants from advertising and selling its property for an unpaid assessment of $2693.75, made by the Commissioners for Opening Streets, as benefits for the opening Lexington street, from Gay street east to Douglas street, and charged that the notice of an application to the Mayor and City Council of Baltimore, to open and condemn Lexington street from the east side of Holliday street to Douglas street, did not authorize the passing of an Ordinance for condemning and opening Lexington street eastwardly from Gay street, so as to make it intersect the present western terminus of Douglas street, and to change the name of Douglas street to Lexington street; and that in fact no notice was given of such application, and that such Ordinance was not in fact passed by both branches of the City Council, and was not, therefore, a valid and binding Ordinance of the Mayor and City Council of Baltimore, and consequently all the proceedings thereunder were null and void. The appellee answered, admitting all the matters and things charged in the bill, but averring that the Ordinance in question was legally passed, and was a valid Ordinance of the Mayor and City Council of Baltimore. The appellee denied the jurisdiction of the Court. After a hearing, the Court (PINKNEY, J.) decided that the Ordinance in question, No. 100, of 1872, was void for the want of the notice required by section 838 of Article 4 of the Code of Public Local Laws, and ordered the injunction to issue as prayed.

From this order the defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER, and ROBINSON, J.

*Edward Otis Hinkley* and *I. Nevett Steele*, for the appellants.

The validity of the Ordinance depends upon the construction to be given to Article 4, section 838, of Public Local Laws, as to the character of the notice required. The case of the *Methodist Ch. vs. Mayor, &c.,* 6 *Gill*, 391–400, shows the object of the notice. The sort of compliance required must be judged by the nature of the thing. It is sufficient if the public are informed. It is out of the power of those intending to apply to do more than give such notice as will call attention in a general way to the subject of the legislation. It is sufficient if it covers the question, that is, if the notice be broad enough.

The almost insuperable difficulties in the way, if a strict construction be required, would render much useful legislation on this subject void, and great expense and delay must inevitably ensue.

The cases of *Steuart vs. Mayor, &c.,* 7 *Md.,* 500; *Mayor, &c., vs. Bouldin,* 23 *Md.,* 370; *Swann vs. Mayor, &c.,* 8 *Gill*, 150, show the liberality of construction heretofore given by this Court, and unless similar judgments be given, the City of Baltimore, must be very injuriously affected by the requirement of notice.

The provision for an appeal was expressly intended to prevent injurious delay, and if the complainant would avail itself of an equitable jurisdiction to avoid the Ordinance, and such jurisdiction be here sustained, it ought, by analogy, be restricted to the time limited for an appeal, otherwise it stands by and sees the city incur all the expenses of the execution of the Ordinance, and then at the last moment invokes an equitable jurisdiction to do a most inequitable, injurious act.

The complainant was notified of the assessment on 23rd June, 1874, and of the right of appeal, and it suffered all the time limited to expire, and did not file its bill until 6th of July, 1875, more than a year after. No appeal is

taken, and more than a year after, at the moment of sale threatened, the validity of the Ordinance is sought to be inquired into, not in the way prescribed, but by an application to the discretion of a Court of equity for an injunction.

In equity, *laches* is a good defence. If injunction is prayed for to restrain a trespass, due diligence must be shown. If one stands by and sees another spend money, he acts inequitably, and cannot appeal to the conscience of the Court to.restrain even unlawful acts. And in case of public companies, this duty is more incumbent than in private cases. *Kerr on Injunctions,* 298, 205-6-7, 349, 496; *Straus vs. Balt. & Ohio R. R.,* 37 *Md.,* 237.

By analogy, the time limited for an appeal ought to be adopted as a time for *laches* in equity. *"Equitas sequitur legem." Page vs. Mayor, &c.,* 34 *Md.,* 558; *Hazlehurst vs. Mayor, &c.,* 37 *Md.,* 199.

*Richard Hamilton* and *Samuel Snowden,* for the appellee.

The notice of an application to the Mayor and City Council to open and condemn Lexington street from Holliday to Douglas street, could only authorize the City Council to pass an Ordinance to *open* Lexington street from its *present terminus,* which being at Holliday street, that is the only point at which Lexington street could be *opened.* When, therefore, the Ordinance was amended so as to begin the opening at Gay street, it in fact, opened a new and different street, one not within the limits of the notice.

The street opened by the Ordinance as passed, is not within the limits of the notice given, and before such an Ordinance should have been passed, another notice should have been given of the intention to apply therefor, and this not having been done, the City Council never acquired jurisdiction to pass the Ordinance. See *Howeth vs. Jersey City,* 30 *New Jersey, (Law,)* 93.

The notice was of an application *to open Lexington street,* meaning that Lexington street was already opened, and that the design of those applying for the opening was to continue and extend Lexington street as already opened.

The opening of a new street, or the extension of any other street than Lexington street, could not possibly be included within the limits of such a notice, nor could they be brought within its limits by changing the name of the street so opened to *Lexington street.* If under such a notice as this, the Council can open another street than the one referred to in the notice, by simply reporting an Ordinance in conformity with the notice given, and amending such Ordinance, so as to open a different street from the one referred to in the notice, then, under the guise of an amendment, it may dispense with the notice required by law altogether. *State vs. Jersey City,* 34 *N. J.,* (*Law,*) 429.

As Lexington street has not been opened by the Ordinance as passed, but another and different street has been opened and extended without the requisite notice having been given, the Ordinance is void. For it is well settled, that where a statute requires notice to be given by publication, before the passing of an Ordinance in relation to any matter whatever, by the legislature of a municipal corporation, such notice is a necessary pre-requisite to the acquiring by such legislature of the jurisdiction to pass such an Ordinance, and the absence of such notice, renders its proceedings *coram non judice,* and therefore void. *Dillon on Mun. Cor.,* sec. 471, *n.* 1 ; *Porter vs. Mayor, &c. of Baltimore,* 18 *Md.,* 301.

And so strictly are such laws construed, that where all Ordinances were required to lay over one week, and an Ordinance was introduced at one meeting and laid over to the next, and then amended by simply changing the name of one of the Commissioners, it was held that it was

not the same Ordinance and therefore void. *State vs. Town of Bergen*, 33 *N. J.*, (*Law*,) 39.

The Ordinance being invalid, a Court of equity had jurisdiction to interfere by injunction, to prevent the appellant from platting, advertising and selling the property of the appellee. *Holland vs. Mayor and City Council of Baltimore*, 11 *Md.*, 186 ; *Mayor, &c. of Frederick vs. Groshon*, 30 *Md.*, 436 ; *Hazlehurst vs. Mayor and City Council of Baltimore*, 37 *Md.*, 220 ; *Dillon on Mun. Cor.*, *secs.* 727, 736.

The appellee has clearly not been guilty of any such *laches* or acquiescence as to deprive it of the right to the consideration of a Court of equity. The whole proceedings for the condemnation were in the nature of an inquisition, and no title could be divested out of the owners of the property, until after the actual payment of the money to them, and the City Council might at any time have repealed the Ordinance. *State vs. Graves*, 19 *Md.*, 372. And none of these proceedings caused the least injury to the appellee or clouded its title ; its property had not been *taken*, and it had therefore no standing in a Court of equity, until such time as the City threatened to proceed to plat, advertise and sell its property, of which it gave notice June 25th, 1875, and on the 6th day of July, 1875, the appellee filed its bill. *Haines vs. Taylor*, 2 *Phillips*, 209, (22 *Eng. Ch.*) *Steuart vs. Mayor, &c. of Balto.*, 7 *Md.*, 500, 516 ; *Directors, &c. of the Imperial Gas Light Co. vs. Broadbent*, 7 *House of Lords*, 600 ; *Archbold vs. Sully*, 9 *House of Lords*, 388.

As the property of the citizen assessed for a tax for opening a street is never attempted to be actually taken or sold until long after the time when the right to appeal has expired, the adoption by the Court of the time in which an appeal shall be taken, as the limitation of the right to apply to a Court of equity for an injunction, would be equivalent to the abolition of the remedy by injunction altogether.

MILLER, J., delivered the opinion of the Court.

Whilst power is conferred on the Mayor and City Council of Baltimore to provide for laying out, opening, extending, widening, straightening, or closing up in whole or in part, any street, lane or alley within the limits of that city, the Legislature has seen fit to provide that "*before* the Mayor and City Council *shall pass* any Ordinance," in exercise of this power, "at least sixty days notice, *shall be given* of any application for the passage of *such Ordinance,* in at least two of the daily newspapers in the said city." 2 *Code, Art.* 4, *sec.* 838. We are unable to place upon this language, any other construction than that it makes such notice a condition precedent to the valid exercise of the power in any given case, and renders the Ordinance inoperative and void unless it substantially conforms to the notice. If substantial conformity be not required we cannot see for what purpose the provision was adopted, or what can be accomplished by it. If an Ordinance which differs in substance from the notice is valid, it must be equally valid if passed without any notice at all, and the law in this respect must be regarded as directory merely, and its observance left to the absolute and uncontrolled discretion of the city authorities. But in our judgment that was not the design of the Legislature in making this provision. In delegating this power they have declared that *before* it shall be exercised by those to whom it is delegated, the *notice shall be given.* That is the language of command, embodying a mandate and not a direction, prescribing a limitation and not recommending the exercise of discretion, and the Courts cannot sanction or authorize a dispensation from its observance. The purpose sought to be attained by it undoubtedly was to give to property holders, whose interests were to be affected by assessments of benefits and damages, notice of what was proposed to be done, and thus secure to them the opportunity to promote or resist the contemplated improvement

by the appropriate expression of their views for or against it before the City Council.

The first question then to be considered is, does the Ordinance before us conform in substance to the notice? The notice is in these terms : "Notice is hereby given that application will be made to the Mayor and City Council of Baltimore, to open and condemn Lexingtion street *from Holliday* to Douglas street." The Ordinance is entitled "an Ordinance to condemn and open Lexington street eastward from *Gay street* so as to make it intersect the present western terminus of Douglas street, and to change the name of Douglas street to Lexington street," and its first section directs the Street Commissioners "to condemn and open Lexington street eastwardly *from Gay street,* so as to make it intersect the present western terminus of Douglas street, as laid down and delineated on a plat of said opening recently made by" the City Surveyor, as follows, and then the limits and bounds of this opening and extension are described, and in another section the name of Douglas street is changed to Lexington street. The difference between what the notice says was contemplated and would be applied for, and what the Ordinance actually authorizes and directs to be done is obvious and material. An essential, if not the most essential, feature of the notice is that the contemplated opening and extension was to be from *Holliday street,* that is to say, it was to commence or terminate at that street, so as to make an opening and extension from that locality, and to continue Lexington street from that point to Douglas street, but the Ordinance does no such thing. It provides that the condemnation and opening shall commence at *Gay street,* and extend to Douglas street, and nothing more. Between Gay and Holliday streets no condemnation or opening whatever could be made under this Ordinance. What the promoters of the improvement asked for in their petition or application, made in pursu-

OCTOBER TERM, 1875. 445

Mayor and City Council of Balt., *et al. vs.* Grand Lodge of I. O. O. F.

ance of the notice, was that there should be an opening from Holliday street, on which the new City Hall fronted, to Douglas street, so as to make a convenient, respectable, continuous and direct thoroughfare from *that locality* to the eastern section of the city, but this the Ordinance fails to accomplish. We are constrained to hold that an Ordinance which thus departs from a material and essential statement in the notice, is not in substantial conformity with it, and is therefore inoperative and void. Counsel for the appellants have referred to the *Methodist Church Case,* 6 *Gill,* 400; *Swann vs. Mayor and C. C. of Cumberland,* 8 *Gill,* 154; *Steuart's Case,* 7 *Md.,* 500, and *Bouldin's Case,* 23 *Md.,* 328, which we have carefully examined, but find that in neither of them has anything been decided or said in conflict with the views above expressed, but on the contrary, so far as the question before us is incidentally noticed in them, and so far as they announce general principles, they seem to us to support, rather than contravene, the conclusion we have reached.

The Ordinance being thus void, the next question is, had the appellee a right to invoke the aid of a Court of Equity to restrain by injunction the enforcement of it? As to this, we entertain no doubt. The appellee's property had been assessed under this Ordinance for benefits to the amount of $2693.75, and the City Collector had given notice that unless this amount was paid by a given day, the necessary steps would be taken to sell the property to enforce its payment. That a Court of Equity has jurisdiction at the suit of a property holder, whose property is thus threatened with sale, to restrain the city authorities from making the same, where the proceedings under which it was about to be made are wholly *null and void*, was settled in *Holland's Case,* 11 *Md.,* 186, and jurisdiction in equity *in such cases* has been recognized and conceded in every subsequent decision, in which the question has arisen or been mooted.

The remaining objection made by the appellants, is that the appellee has lost this right to proceed in equity by acquiescence and *laches*. The Ordinance was passed on the 30th of September, 1872, and the bill in this case which was filed on the 6th of July, 1875, avers that the Street Commissioners proceeded under the Ordinance, and assessed the complainant's property for benefits, and rendered it a bill therefor, and that *on the 25th of June*, 1875, the City Collector caused a notice to be published, notifying all persons in arrears for benefits assessed for the opening of Lexington street, that payment must be made on or before the 30th day of that month, otherwise the property of delinquents will be placed in the hands of the City Surveyor to plat, preparatory to advertising for sale. The answer of the Mayor and City Council avers that in due course the final return of all their proceedings was made by the Street Commissioners to the City Register, on the 23rd of June, 1874, and due notice given to the complainant thereof, and of the assessment for benefits made on its property, and of its right to appeal therefrom tô the City Court, and that complainant failed to appeal therefrom, and at the time of filing its bill, the time within which such an appeal might have been taken, had long before expired. This is all the information which the record affords us as to what had been done in execution of this Ordinance, and upon the subject of acquiescence and *laches*. Unless, therefore, this Court holds that parties thus situated, must seek their remedy in equity against the enforcement of a void Ordinance within the time limited for an appeal to the City Court from assessments made thereunder, or adopt by analogy that period as a limitation to such suits in equity, there appears to us no good reason why in this case the appellee should be deprived of its remedy upon the ground of acquiescence and *laches*. But the complainant filed its bill promptly, after notice had been given that its property would be seized and sold to enforce payment of

this assessment. Before that time, what standing had the complainant in a Court of equity? The very foundation of jurisdiction in equity in such cases, is, that the property of the citizen is about to be taken for taxes or assessments, levied under proceedings which are not merely irregular and defective, but wholly null and void. To a bill filed before the property was thus about to be taken, charging the proceedings to be void, the answer to the complainant would be, this affords you no ground of relief in equity, inasmuch as no harm has yet been done to you or your property, and it will be time enough to ask for an injunction when your property is sought to be interfered with or taken, and especially could this answer be well made when it is remembered that it was all the while within the power of the City authorities to repeal the Ordinance and abandon the improvement. In all the cases in which this remedy has been sought, the parties have awaited the attempt or the threat to seize and sell their property before filing their bills, and in none of them where the proceedings have been promptly instituted after that time, has the defence of *laches* and acquiescence been sustained. Thus in *Holland's Case*, (the original record in which we have examined,) the bill was not filed until after the paving had been completed, and the complainant's lot had been advertised for sale. The answer in that case, distinctly set up the defence of *laches* as a bar to the remedy in equity, and averred the complainant had notice of the application and the determination of the City Commissioner to have the paving done, and before any expense had been incurred in the completion of the subsequently executed contract. This defence of *laches* and acquiescence was also pressed in argument by the appellee's counsel, and yet this Court sustained the bill, and reversed the order which had dissolved the injunction. So in *Porter's Case*, 18 *Md.*, 284, the bill was not filed until after the property was advertised for sale, and the grading had been completed at a cost and

expenditure of over $100,000. The complainant and others who resisted the payment of the tax, instituted no proceedings to stop the work during its progress, nor made any objection thereto until after it was finished, and this Court again sustained the jurisdiction in equity, and continued the injunction upon the ground that the proceedings under which the tax was levied, had been instituted without lawful authority. In view of these decisions, and others that might be cited to the same effect, we cannot sustain the defence in this case. The authorities cited by the appellants' counsel upon this question, present very different circumstances, and we find nothing in them to justify their application to the present case. To adopt the analogy contended for would, as it appears to us, work a practical abolition of the remedy by injunction in such cases. For these reasons we find ourselves compelled to affirm the order granting the injunction.

> *Order affirmed, and*
> *cause remanded.*

(Decided 10th March, 1876.)

STEWART, J., filed the following dissenting opinion :

Assuming the averments of the bill to be true, it does not follow that the Ordinance of the Mayor and City Council of Baltimore, now in question, is not a valid act.

There is no force in either of the objections made to it, to wit, that it was not legally passed, so far as the forms of legislation are concerned ; or that the Council transcended its authority in its passage.

The City Council, by the 23rd section of Article 4, 2nd Code, is authorized to settle its rules of procedure.

There is nothing in the record to show that the Ordinance was not passed in pursuance of the rules or formalities prescribed by the Council.

The bill avers that the Ordinance was passed by the Second Branch, amended by the First Branch, and the amendment concurred in by the Second Branch, and that the Ordinance was approved by the Mayor.

It thus had the approval of both Branches of the Council, and of the Mayor, and became the law of the municipality. *10th section, 4th Article, 2nd Code.*

The 837th section of Article 4, 2nd Code, authorizes the Mayor and City Council to lay out, open, extend, widen, shorten, or close up in whole or in part, any street, square, lane, or alley, which in *their opinion*, the public welfare or convenience may require; and the requisite provisions are directed to carry into effect, the purposes of the power, and to apportion the relative advantages, or injuries consequent thereon; with right of trial by jury and appeal to the Courts, for the adjudication of the rights of the parties. By the latter clause of the section, the City Council is authorized to enact all Ordinances, from time to time, deemed necessary and proper to effect the objects specified in the section.

The bill concedes that notice, as provided by the 838th section, was given to open and condemn Lexington street, from Holliday to Douglas street; but the ground of the objection is, that the Ordinance only provided for opening Lexington street, eastwardly from Gay street; and because it was not provided to be opened from Holliday street.

The question is not whether the notice provided to be given by the 838th section, is *merely advisory* or *mandatory*, and a necessary preliminary to vest the City Council with jurisdiction over the subject; but the notice provided in the 838th section having been given to open Lexington street, from Holliday, eastwardly, whether it is competent for the City Council under such notice, to open the street in part, that is from Gay street, eastwardly, without opening it further to Holliday street.

After the notice was given to open Lexington street from Holliday, eastwardly to Douglas street, and the City Council had taken the subject into consideration, it would seem to be a very narrow and inadequate construction that compels the City Council to open the street the entire length of the proposed route, or to do nothing, and thus restrict it from opening the street in part.

The notice was not designed to limit the action of the City Council to the mere ministerial duty of either approving or rejecting the proposed improvement, without power to make any modification whatever.

To deny to the City Council any discretion in the matter, would, in effect, destroy its legislative capacity, and contravene the provisions of the 837th section, which *in totidem verbis,* gives to it the power, which carries with it the duty to provide for the opening or closing up, in whole or in part, any street which according to its opinion, the public welfare or convenience may require.   If it determine that the opening of the street from one *terminus* to the other, as proposed, is not necessary or advisable ; but that the public welfare requires it to be opened *in part,* it is competent for it so to ordain.

It may approve, reject or modify the plan of improvement indicated, as it may think just and proper.   It is a question of good faith and public policy.

One Branch may pass it for the whole line, the other has an equal right to amend it, by providing for part— each must exercise its judgment as a co-ordinate Branch of the local legislature for the City.

The technical construction insisted upon by the appellee, is utterly incompatible with the reasonable performance of the duties of the City Council, as the legislative department of the City Government, as authorized and empowered by the 837th section.

Nothing more than a general notice of the application is directed to be given by the 838th section— no specific

form of notice is required, and the obvious purpose of any notice was to prevent partial, hasty or improvident action on the part of the City Council, and to give to all parties the opportunity to present counter views, and that the subject might be fairly and fully canvassed by the public, and the best results attained for the general welfare and convenience.

I take it, considering the two sections together, (837 and 838,) and giving to them a reasonable construction, it never could have been the design to limit the powers and legislative functions of the City Council, as contended for by the appellee. See *Methodist Church vs. Mayor and City Council,* 6 *Gill,* 391 ; *Steuart vs. Mayor and City Council,* 7 *Md.,* 500 ; *Mayor, &c. vs. Bouldin,* 23 *Md.,* 328 ; *Page vs. Mayor, &c.,* 34 *Md.,* 558.

But if there had been defects in the Ordinance, it was too late for the appellee to seek to take advantage of them by injunction.

The appellee had notice of the assessment of which it complains, as early as 23rd of June, 1874. The bill was not filed until 6th of July, 1875.

On the 30th Sept., 1872, the Ordinance was approved, and the authorities of the City had gone to work and taken the usual steps and expensive proceedings, by surveys, plats, and sale of property in the bed of the street, &c., to carry into effect the object of the Ordinance as was their duty.

The appellee had the right to appeal to the tribunal authorized specially to hear its complaint, and under which by motion to quash, or other proper proceeding, it could have had regularly tested the validity of the Ordinance ; or it might resort to a Court of Equity, if it so elected in time to restrain the threatened proceedings ; but it has stood by for more than a year, and suffered the City to incur the heavy consequential expenses ; and if it now

succeed in the annulment of the Ordinance, the City will be involved in the loss.

Under such circumstances it would be an extraordinary indulgence, and against the preponderating equities of the City, to permit the appellee after such acquiescence and lapse of time to arrest the proceedings under the Ordinance, to relieve it from the assessment. A Court of equity more especially, where the result would be to cancel the solemn legislative act of a large municipality and entail upon its inhabitants very burdensome expenses and loss, must hold the appellee bound to make its election within the time limited by the law, whether to resort to the one forum or the other, by analogy, if not, in express obedience to the requirements of the law, in case of appeal to its Courts.

If it is guilty of a want of reasonable promptitude in suffering such time to elapse without steps to vindicate its rights, a Court of equity ought to treat it as a sufficient bar to relief by injunction, for neither that Court more than a Court of law, should encourage *laches* in parties invoking its interference, but should hold parties bound to exercise diligence to guard their rights. See *Scott & Wilson vs. Carroll,* 6 *G. & J.,* 309; *Methodist Church vs. Mayor, &c.,* 6 *G. & J.,* 391; *Straus vs. B. & O. R. R.,* 37 *Md.,* 237; *Wilhelm vs. Caylor,* 32 *Md.,* 152; *Dillon on Corp.,* secs. 476, 727.

The case in none of its features justified the injunction, and the order of the Circuit Court for Baltimore City allowing it, ought to be reversed, and the injunction dissolved, according to my judgment.