# CIRCUIT COURT OF BALTIMORE CITY.

Filed December 20, 1895.

CITY AND SUBURBAN RAILWAY CO.

VS.

THE BRUSH ELECTRIC CO.

*Messrs. Cowen, Cross & Bond* for plaintiff.

*Messrs. Barton & Wilmer* for defendant.

WRIGHT, J.—

As I stated at the conclusion of the argument, I do not think the evidence in this case establishes the fact that the proposed erection of the lamp pillars or poles would result in such injury to the plaintiff, as would under the circumstances of this case, justify a continuance of the injunction. This

conclusion was reached after the plaintiff's counsel had formally, in open Court, waived any objection to the erection, provided the poles should be of the size and character suggested by him, namely, iron poles of the same diameter as those now in use by the plaintiff. This substantially left but one objection of the plaintiff on the ground of injury to it, and that was that the size of the poles, bringing them about two and a-half inches closer to the running cars, was excessive and would unreasonably add to the danger of passengers on said cars. As the defendant, in its answer has offered to reduce the size of the poles, to that of the poles on Fulton avenue, that is, to ten inches, to which they were limited by the order of the general superintendant of lamps—which reduction can be provided for in any order that may be passed—the distance between the running cars and the proposed poles would be about one and a-half inch less than the distance between said cars and the poles now set up by the railway company.

As it has been held in this State that a street railway has no paramount right of way even on its own tracks (Lake Roland, &c., R. R. Co. vs. Mc-Kewen, 80 Md. 593, 602) and that the grant of the right to lay such tracks is subject to the paramount right of the city to interfere with the same "whenever the city authorities might deem it necessary for the public welfare"; I was, and am of the opinion that the inconvenience anticipated by the plaintiff should not be allowed to interfere with the paramount right of the city, especially as that inconvenience amounted to little more than some additional expense to the plaintiff, not unreasonable in amount, that would be required to make provisions to fully protect passengers on its cars, and which provision, it seemed to me, from the plaintiff's own evidence, should be made to avoid possible accidents from the railway's own poles already erected.

Although, as stated in Railway Co. vs. Telegraph Asso. (48 Ohio St. 426) "the main purpose of streets and highways" is "to facilitate travel and transportation," it by no means follows that other agencies beside street railways are not properly considered as facilitating travel and transportation over the streets of a city; on the contrary, one of the most important of such agencies is the proper lighting of such highways in order that they may be safely used by the general public (Crosswell's Law relating to Electricity, Sec. 126). And unless the action taken by the city—for under the circumstances of this case, I must consider it taken by the city—in relation to the location and erection of these poles, under its ordinances, is of such an oppressive and unequal character as to shock the conscience of a Court of equity, the Court will not declare such action and such ordinances void. This oppressiveness and inequality must be made apparent to the Court (Mayor, &c., vs. Beasley, 1 Hamph. Tenn. 232) ; and not having been made thus apparent, but, on the contrary, the action complained of, being in my opinion, if taken by authority of the city, a reasonable exercise of the power vested in it, it follows that the Court will not continue an injunction against this exercise of power unless it is apparent that the location and erection of these poles as proposed would be without the authority of the city. This question is presented, it seems to me, in rather an irregular manner. When the answer of the defendant came in it became apparent that in the erection of these poles the defendant was acting under the direction of an officer of the city, claiming to act for the city, in accordance with his duty, for a public municipal purpose, namely: the proper lighting of the highway by lamps to be placed on said poles. An injunction then, under this aspect of the case, is practically an injunction against the city itself, preventing it lighting said highway in the manner it had, through its proper officer, decided to be the most desirable and most advantageous manner of lighting the same. At this stage it would appear that the plaintiff should, by proper amendment, have brought the Mayor and City Council into the case ; but not having done so, the action taken by the city, through its officer, must be considered as collaterally attacked in these proceedings, and so it will have to be treated.

It appears that by Ordinance 99, approved May 21st, 1894, the Mayor, City Register and General Superintendent of Lamps were constituted a commission, and as such were authorized and directed to contract for the lighting of

the streets with electric arc lights; that in accordance with the provisions of the ordinance the said commission made a contract with the defendant corporation "for the lighting of the whole or any part of the streets with electric arc lights, where electric lights are used in the City of Baltimore, or where their use may hereafter be duly authorized," &c. And the question to be considered is, have the lights, to be placed on the proposed poles, been duly authorized? Before, however, considering that question it is proper to state that in addition to the directions of the Superintendent of Lamps, there is another ground on which the defendant contends that it has a right to erect the poles in dispute. It claims this right by the authority of Ordinance No. 97, of May 19th, 1891 (City Code, 1893, Art. 48, Sec. 182), taken in connection with Ordinance No. 2, of November 25th, 1892 (City Code, 1893, Art. 48, Secs. 157E and 157F). By the first of said ordinances the defendant is authorized "to construct, operate and erect lines of wires over, under and along the streets of the city, provided, however, that the construction, maintenance, removal and repair thereof the said corporation shall be at all times subject to and entitled to the benefit of all ordinances of the said city providing for the condemnation, construction and repair of telegraph poles and lines therein."

The second of said ordinances (Sec. 157E) provides that no person or corporation shall "plant, erect or set up, *on any portion of the bed of such streets*, alleys or lanes, or on any portion of the sidewalk thereof any hitching posts, telegraph, telephone, electric light, or other pole or poles of any description whatsoever, without first having obtained a written permit therefor from the City Commissioner, approved by the Mayor." By Sec. 157F, it is provided that no such permit shall be issued unless the applicant seeking the same shall apply therefor in writing, agreeing in such application to do certain things therein provided.

It is averred in the bill and admitted in the answer that the defendant was proceeding to erect these poles under a permit from the City Commissioner. This being so and the Mayor and City Council having full and entire control over the streets (Postal Tel. Co. vs. Mayor and City Council, 79 Md. 502), and also being authorized to designate and appoint the officer to carry out the provisions of such ordinances as it can legally enact (Northern Central Railway Co. vs. Mayor and City Council, 21 Md. 50, 105). And having legally designated such officer, who has in this case acted within the sphere of his duty, it is difficult to understand how the proposed action would constitute a public nuisance, as charged in the bill (Garrett vs. Lake Roland R. R., 79 Md. 277). It is also impossible for me to come to the conclusion, under these ordinances and decisions, that the plaintiff is unlawfully erecting said poles on said highway.

There is, however, an additional ground on which the defendant claims the right to erect the poles in controversy.

By Ordinance 104, April 24th, 1880, (City Code, 1893, Art. 28, Sec. 3) it is provided that the general superintendent of lamps shall, "with the approbation of the Mayor, erect new lamp pillars and lamps for lighting the streets, whenever and wherever in his judgment and that of the Mayor, the convenience and necessity of the public may require the same *upon proper application in writing being made to him*." Having the power to erect new lamp pillars, it could not, I suppose, be successfully contended that he had not full power to direct their erection by a company, under contract with the city, to light the streets; but the difficulty, as I apprehend it, from the contention of the plaintiff, under this ordinance, of giving legal effect to the order of the Superintendent of Lamps, is to be found in the words of the ordinance that he shall erect, &c., "upon proper application in writing being made to him." Were this a direct proceeding on the part of the Mayor and City Council against the defendant to compel the erection of these poles, which was resisted by the defendant on the ground that proper application in writing had not been made to the General Superintendent of Lamps, this objection would have very considerable weight, but here there is no dispute between the defendant and the city, and it is attempted collaterally to attack the action of a city officer, and practically of the city itself, the Mayor and City Council being not only not a

party, but so far as the proceedings show, insisting on the action complained of by the plaintiff. In addition to this, there is no evidence whatever to show that the action of the General Superintendent of Lamps was not taken after a full compliance with the terms of the ordinance, and this being so, should the presumption be for or against the legality and regularity of the action of this official? He directs the erection of these poles, and has the power so to direct, if the provisions of the ordinance, in other respects have been complied with. The law, on this state of facts, raises a presumption that he has performed his duty at the proper time and in the proper manner. "The presumption is constantly indulged in support of all kinds of official action" (Mechen on Pub. Officers, Sec. 579, and authorities cited. See also Hamon vs. Gordon, 93 Mo. 223). This presumption is not an indisputable one, but may be overcome by countervailing evidence, in the absence of· evidence, however, it will. prevail. Two examples of the application of this rule may be found in our Maryland Reports. In the case of the Mayor and City Council vs. Grand Lodge (44 Md. 436) the bill was filed by the Grand Lodge I. O. O. F. against the city to obtain an injunction to prevent the city from advertising and selling its property for an unpaid assessment as benefits for the opening of Lexington street, and alleged that no notice had been given of the application to the Mayor and City Council to open and condemn said street. which notice was required by the existing law on the subject. The city answered admitting all the matters and things alleged in the bill, but averred that the ordinance was illegally passed and was a invalid ordinance. As notice was a requisite and it was admitted that no notice had been given, the Court held that the ordinance was inoperative and void.

The second case, Page vs. Mayor and City Council (34 Md. 558, 1565, 566) was one where the question was practically the same, but where there was no admission of a failure to give the required notice, and no evidence of the same ; the Court of Appeals held that as there was no proof whatever offered to show that the notice was not given as the law required, in the absence of

proof it must be presumed that the requirements of the law were complied with and that the Mayor and City Council acted within their power and authority in passing the ordinance. I think the principle recognized and acted on in the authorities cited is decisive of the question. The injunction will be dissolved so far as it prevents the erection of poles, provided said poles are reduced to the size of those on Fulton avenue, namely, ten inches in diameter, and a reasonable time will be allowed the defendant to reduce the size of those already erected.