ARTHUR LEE BROWNE ET AL. *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE.

[Nos. 9, 10, April Term, 1932.]

*Decided June 22nd, 1932.*

The causes were argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Douglas H. Gordon,* for the appellant.

*Allen E. Davis, Assistant City Solicitor,* with whom was

214

*R. E. Lee Marshall, City Solicitor,* on the brief, for the appellee.

Bond, C. J., delivered the opinion of the Court.

The appellants as taxpayers contest the validity of an act of assembly and two ordinances, and of proceedings under them, looking to the building of a wide highway and viaduct in Baltimore City across the valley of Jones Falls, from St. Paul Street on the west to Forrest Street on the east. Following the line from west to east, it has been planned to build the way from St. Paul Street in the neighborhood of Mulberry and Franklin Streets, across the public gardens and ways known as Preston Gardens, to Courtland Street, thence across Courtland Street and over the site of private buildings to Calvert Street, then on the line of Bath Street, but with greater width, to the property and yards of the Western Maryland Railway Company at Front Street, then across the railway property and across streets and private property sites, and over a westward extension of Orleans Street to meet it, to Forrest Street. An act of assembly, passed in 1924, chapter 229, had authorized the incurring of a municipal debt for the construction of a crossing from one part of the city to the other, somewhere between North Avenue on the north and Pratt Street on the south, and added, in terms, a power to condemn, close, open, widen, straighten, grade and pave for the purpose. The constitutionality of that act is denied because of supposed defects in its title, and because of a supposed violation of the Home Rule Amendment of the Constitution, article 11A, and usurpation of the charter powers of the city under that amendment. The ordinances are attacked mainly on the ground that the public notices required by section 828 of the Charter, as prerequisites to the city's rearrangement of streets, and the incidental dealing with private property, have not been complied with.

The two ordinances constituted successive steps in the preparation of the one project. The first, Ordinance No. 902, approved December 23rd, 1929, was passed before many of the details of the construction, and more particularly before the exact location of the western outlet, had been de-

cided upon. And it was immediately concerned only with the outlining and clearing of the surface of the land to be crossed. Its title and its first section both declared that it was in part furtherance of what it called the "Orleans Street Viaduct," and described as extending from the east side of St. Paul Place to the southwest side of Forrest Street, but it also expressly confined its undertaking to the opening and grading of two parts only, the section from St. Paul Place easterly to Front Street and the railway tracks, and the section from the other side of the railway tracks, at Hillen Street, to the eastern terminus at Forrest Street. The advertised notice for this ordinance was thus limited to so much of the undertaking, and the preliminary survey or map filed for inspection before the adoption of the ordinance, in compliance with section 828 of the Charter, merely outlined the two portions or strips to be crossed. The measurements of the two strips were given. This earlier ordinance seems to have contemplated an exercise of only the power over the subject of highways which is contained in section 6 (26) of the Charter. Its final section provides that proceedings under the ordinance shall be regulated by the charter provisions. And it was in conformity with these provisions that there was a preliminary notice of the ordinance published, and a survey or map filed for inspection, to comply with the regulations for the exercise of that power, in section 828. The second ordinance, No. 1206, approved a year later, December 20th, 1930, was the ordinance which covered the plans of the viaduct, then more fully worked out. It professed to be passed, not in the exercise of the charter power over highways, but in the exercise of a power supposed to be contained in the loan act (1924, ch. 229), which, as has been stated, did in terms provide for the condemning and opening of the highway. In the bill of complaint demurred to it is averred that there was no preliminary publication of notice of this ordinance to meet the requirements of section 828 of the Charter, and we must, in considering the sufficiency of the bill, assume that averment to be susceptible of proof.

The bill of complaint seeking an injunction against proceeding under the first ordinance was filed before the second ordinance was passed; and an answer and a stipulation of facts were filed, and testimony of city officials on their plans was taken. The court denied the injunction, and dismissed the bill; and the first appeal has been taken from that action. Before the decision of that case, the second ordinance was passed, and a bill of complaint attacking proceedings under it was filed in the same court. A demurrer to that second bill was filed and sustained, and the second appeal has been taken from that action. The court dealt with the ordinances in the two cases separately, and rendered a decision on the sufficiency of each by itself, and the problems of each case have been argued separately in this court. Section 828 of the Charter, on which the objections are mainly grounded, provides that, before any ordinance dealing with street changes shall be passed, notice shall be published giving "the length or width of such street, square, lane or alley, or part thereof to be laid out, opened or extended, and, in the case of the widening or straightening shall set forth clearly both the present and the intended width and also the length of any street, lane or alley, or part thereof, intended to be widened or straightened, and in case of closing shall set forth clearly the length and width of the street, lane or alley, or any· part thereof, intended to be closed," and that the map "shall show the course and the lines of the projected improvement, and also the lots and buildings thereon which shall be taken or destroyed, in whole or in part, and which, in the case of closing shall show the street, lane or alley, or part thereof intended to be closed, and also the abutting lots and improvements thereon." And it is objected that many of these specifications have been omitted from the published notice and map accompanying the first ordinance; and, as has been stated, it appears that there has been no further publication of details preceding the subsequent ordinance, No. 1206, although a detailed map was filed for inspection in the usual way.

The act and the ordinances do not present separate, unre-

lated problems for solution. The object sought in both bills of complaint is to enjoin the prosecution of the one project, for lack of some of the requisite legal foundation in the act of assembly or in the ordinances. And, if the project has all the requisite foundation in the act or in either ordinance, the court could not enjoin its prosecution because of any legal shortcomings in one ordinance, for it could not enjoin a work for which full legal authority existed in any enactment or enactments brought to its notice. *Ches. & O. Canal Co. v. Western Maryland R. Co.,* 99 Md. 570, 575, 58 A. 34. As the two cases on the ordinances were before the court below at the same time, before decision of the first, and both have been argued together in this court, both the ordinances and the act of assembly involved may be noticed by the courts in either case. There is to be decided finally here the one question whether, in any part or parts of these preliminary steps, the required public notice and opportunity to be heard on the whole project have been given, or, more exactly, whether there has been any such material lack of that notice and opportunity as would call for interference by the courts to enjoin proceeding with the project under the present authorization. *Baltimore v. Grand Lodge,* 44 Md. 436, 443.

If the act of assembly, with its general authorization to condemn and take other proceedings looking to the building of the highway, is sufficient of itself, because it authorizes proceeding without reference to the charter requirements of notice for street openings, then no consideration need be given to the question of compliance with those requirements. The work will have full legal authorization without it. But we think the act is not so sufficient. It, first, authorizes the incurring of the necessary municipal debt, in accordance with the Constitution, article 11, section 7, provides for expenditure on this project and another, and then adds the broad authorization for condemning, closing, opening, widening, straightening, grading, and paving of a thoroughfare, with the necessary bridges and viaducts, from the one side of the city to the other. There may have been need of one addition to the powers already granted to the city in its charter. In

the case of *North. Cent. Ry. Co. v. Baltimore*, 133 Md. 658, 106 A. 159, it was decided that section 6 (26) of the Charter did not give the city power to condemn property already subject to a public use which the State itself had sanctioned, and that a further act would be necessary to empower it to condemn rights over railroad property involved in that case. And the amendment of the Constitution, article 11A, providing for local home rule in the state and charters to effect it, contains an express prohibition of any extension or enlargement of the powers previously granted to the city in section 6 of the charter. There may therefore have been need of legislative authority in this instance to overcome the conflict of public uses resulting from the previous franchises of the railway to be crossed, if there should be a conflict. In point of fact, it is stipulated that the railway company has consented to the crossing. But we do not agree that any necessity of legislative authorization for that purpose permitted an assumption by the General Assembly of power over the whole project, withdrawing it entirely from regulation under the charter power. Section 4 of article 11A of the Constitution provides that, after the adoption of the home rule charter by the city, no local law should be enacted by the General Assembly for any subject covered by the express powers granted the city.

The General Assembly is left with power to alter the grants, but not to share with the municipality any field of regulation or government granted. *State v. Stewart,* 152 Md. 419, 137 A. 39; *Ness v. Supervisors,* 162 Md. 529, 160 A. 8. The opening or erection of the highway and viaduct is a local project, coming within the charter powers of the city, except for the crossing of existing franchises derived from the State, and any legislative provision for the project must be classed as a local one, we think. *Ness v. Supervisors.* An authorization for crossing existing franchises is not inseparable from control of the whole highway project, and we see no warrant for a departure from the distribution of governmental power in the Home Rule Amendment of the Constitution in order to authorize the crossing. We conclude,

therefore, that the proceedings for the project, notwithstanding the resort to legislation for authorization of a loan and for authority to condemn a way over property already appropriated, must conform to the requirements of section 828, respecting public notice of projects for opening city streets.

It is objected that the act is invalid for any purpose because it attempts to legislate upon more than one subject, and its title does not properly describe the subjects acted upon. Const. art. 3, sec. 29. But we see no substantial foundation for that objection. The title refers clearly to both the authorization of the loan, and the expenditure on the highway across from one side of the city to the other, and these provisions, combined with the authorization of the condemnation and opening, so far as the General Assembly may act upon the subject, may fairly be said to concern only one general subject-matter. There is no danger that the title or scope of the act might entail the results which the Constitution sought to avoid in the prohibitions cited. *Culp v. Chestertown,* 154 Md. 620, 625, 141 A. 410; *Worcester County v. School Commissioners,* 113 Md. 305, 308, 77 A. 605. We regard the act, therefore, as containing a sufficient authorization for the crossing of existing public utility property. If no second attempt to comply with the requirements of notice in section 828 of the Charter, by public advertisement before the passage of the second ordinance, No. 1206, was made, that ordinance could not be relied on as meeting the complainants' objections. *Baltimore v. Grand Lodge,* 44 Md. 436. Reliance must therefore be placed entirely on the proceedings had before the passage of the first ordinance, No. 902; or the objections are well taken and the injunction against the project should issue. *Baltimore v. Grand Lodge,* 44 Md. 436, 443.

Partial and limited as was the information given in the notice and map provided before the passage of that ordinance, it seems to this court not to be so far lacking or defective as to justify enjoining the project because of it. It is objected that the notice given and the map filed for that ordinance omitted, first of all, to give any measurements whatever of

the structure to be erected; it gave only the measurements of the two sections of ground area marked out to be cleared and crossed. While section 6 (26), on opening highways, is broad enough to provide for highways of any construction, section 828, with its requirements of notice, appears to have been worded in expectation of the construction of only the ordinary surface improvements. It requires, for instance, that the map to be exhibited shall show the course and lines of the projected improvement, and also the lots and buildings thereon which shall be taken or destroyed. But we take it to be clear that the intention of the section is to require the notice of the plan in any highway opening or change under the Charter, even though the section may not have used words specifically applying to such an unusual provision for travel as a viaduct. And, applying the section accordingly, its requirements seem to this court to be met if sufficient details of the ground area to be utilized are given. The chief object, if not the only one, of giving the details, seems to be to inform surface owners of changes to be made on the surface, and surface measurements would accomplish that object. In addition, the notice and map informed the surface owners, and all others interested, that the space to be cleared would be improved by the erection of a viaduct connecting two clearly designated and well-known points in the city. We see no reason for construing the section to require, as essential to the validity of proceeding under the ordinance, that notice be given of the exact measurements of the viaduct to be erected within the area.

In considering the fragmentary extent of the details given of that ground area, there must arise, at once, a doubt whether requirements of details of a projected highway, and of the property to be affected, can be found to have been complied with in proceedings with reference only to sections of it. But, if we test the notice by the purpose to be subserved, the doubt in this case may not be irremovable. The purpose "undoubtedly was to give to property holders, whose interests were to be affected by the assessments of benefits and damages, notice of what was proposed to be done, and thus secure to

them the opportunity to promote or resist the contemplated improvement by the appropriate expression of their views for or against it before the City Council." · *Baltimore v. Grand Lodge, supra.* And in the case cited ·an ordinance which excluded from the improvement a block expressly included in the notice was held void because of a material discrepancy. The court said in *Baltimore v. Bouldin,* 23 Md. 328, 370, in referring to the original act empowering the city to open streets, after having given notice of the project: "It would be fatal to the objects for which these powers are delegated by the General Assembly of the State, to require all the notices of the application for ordinances to carry into effect these powers, to specify with technical precision the objects for which the applications will be made. Such particularity would embarrass all the subsequent proceedings dependent on the notices, and render the rights acquired under them so precarious as to destroy all confidence in the local legislation." But in connection with that it must be borne in mind that the requirement of notice in its more recent form now specifies some details to be given. Furthermore, in addition to the test of substantial accomplishment of the purposes of the requirement, there are to be observed limits on interference by the courts on the ground of mere irregularities in the performance of functions clearly within the powers of the municipality. *Ruark v. International Engineers' Union,* 157 Md. 576, 593, 146 A. 797; *Konig v. Baltimore,* 128 Md. 465, 473, 97 A. 837. If there has been no substantial probability of injury from irregularities, the court may deny interference by injunction. *Methodist Church v. Baltimore,* 6 Gill, 391-401.

As has been seen, the ordinance, notice, and map made it known that a viaduct was to be erected from the east side of St. Paul Place to Forrest Street, thus announcing well-known terminations, and in effect making the length more clearly apparent than if it had been given in feet and inches. And the two areas outlined gave the widths in those areas, and fixed the course of the whole. As the areas were outlined and measured on a map of the portion of the city immediately

involved, there was notice to some extent of the highways and private properties to be included in the change. There were no measurements, and no outlining, of the portion crossing the railway tracks, but, in view of the consent of the railway company to the crossing, there could be no ground for injunction in that omission. And, for a like reason, failure to give measurements for the western termination on the public park, or Preston Gardens, would not afford sufficient ground for an injunction. It is objected that the advertised notice and the map did not take up each alley or lane to be closed by the construction of the masonry slope at the Forrest Street entrance, although they did give the length and width of the slope or vamp, but it is not apparent from anything in the record and matter before us that there will be public alleys or lanes closed. Section 828 is concerned only with the exercise of the city's power in opening, straightening, widening, or closing public ways.

The compliance with section 828 cannot be considered as full. But there is no question of evasion, obscurity, or mistake, as there was in the case of *Baltimore v. Grand Lodge, supra.* And there is no apparent possibility of any resulting injury such as section 828 was designed to avoid. We therefore conclude that the preliminary notice and map of the project before the passage of the Ordinance No. 902 may be considered as in substantial conformity, or, at least, in sufficient conformity to justify the refusal of the injunction in either case.

There is a further objection, not related to the giving of notice, that this ordinance and its plan have not been submitted for the investigation and approval of a commission on city plan, provided for in section 200-A of the Charter. It is stipulated by the parties that there has been no meeting of the commission designated since June 7th, 1917, that vacancies in its membership have not been filled, and it has ceased to function. As the lower court observed in its opinion, the section cited does not expressly make submission to that commission a prerequisite to the passage of a valid ordinance, or the construction of a work, its terms being in

this respect in contrast with the requirements of other sections, such as section 202, providing for submission of plans to the art commission. We agree that there is in this objection no ground for the issue of an injunction.

*Decree affirmed in case No. 9, with costs.*
*Decree affirmed in case No. 10, with costs.*