# RECORD BUILDING & LOAN ASSOCIATION *v.* SAFE DEPOSIT & TRUST COMPANY, Trustee.

[No. 117, October Term, 1933.]

*Decided February 9th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Edward L. Ward,* with whom was *A. Herman Siskind* on the brief, for the appellant.

*Frederick J. Singley,* with whom were *Hinkley, Hisky & Burger* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

By mortgage dated August 12th, 1921, Max Reiser and Annie Reiser, his wife, conveyed to the Safe Deposit & Trust Company of Baltimore, trustee, the respondent and appellee in this case, a lot on Gay Street in Baltimore City, to secure the payment of the sum of $4,500 and the interest thereon.

By mortgage dated November 12th, 1925, Ellis Stein and Goldie Stein, his wife, the then owners, conveyed the same property to the Record Building & Loan Association of Baltimore City, petitioner and appellant, to secure the payment of the sum of $4,500 and the interest thereon; the balance due July 14th, 1933, being $2,726.80.

A third mortgage was given to the Bonded Mortgage Company of Baltimore, but the record does not show when, or for what amount. It does appear that the property was sold by Robert Biggs and Harry T. Kellman, trustees, subject to the two mortgages mentioned, on November 10th, 1930, and conveyed by them to the Minber Corporation by deed of of March 23rd, 1931, for $3,500. In the petition of the appellant is the statement that: "The Minber Corporation * * * by mesne conveyances, is the owner of the equity of redemption in said property, having invested therein the sum of $5,067.32." It is not a party to this appeal, and its status, therefore, will not be discussed, except as it, or any other interested party, may be affected by the decision.

The Mayor and City Council of Baltimore, in pursuance of the Act of Assembly of 1924, chapter 229, passed an ordinance (No. 902), approved December 23rd, 1929, for what it called the "Orleans Street Viaduct," and a second and final ordinance approved December 20th, 1930, with the plans of the viaduct more fully worked out. The commissioners for opening streets, under the authority of Ordi-

nance No. 902, proceeded to condemn such properties as were necessary in the prosecution of the project, and one of those condemned was the mortgaged property with which we are here concerned. The whole lot was condemned, and the award of $14,000 became final on September 10th, 1930. It is agreed that all parties to these proceedings had knowledge of the award, which was to "Ellis Stein and Goldie Stein, his wife, or such person or persons as may be legally entitled thereto." Ninety-five properties were condemned for total awards of $1,863,797, and to October 6th, 1930, $1,201,171 had been paid for fifty parcels; the property here involved not being one of them.

On August 25th, 1930, a bill was filed by Arthur Lee Browne and others against the Mayor and City Council of Baltimore, praying an injunction against the city from proceeding with the proposed improvement, and no further payments were made by the city after October 6th, 1930, until May 24th, 1933. The ordinances were upheld June 22nd, 1933, in *Browne v. Baltimore,* 163 Md. 212, 161 A. 24. On December 8th, 1931, foreclosure proceedings were instituted on the first mortgage by the Safe Deposit & Trust Company, trustee, and Frederick J. Singley appointed trustee to make the sale, and the property was sold at public auction and bought in by the trust company, trustee, for $4,100; among those present at the sale being A. Morris Siskind, attorney for the petitioner appellant. The sale was ratified February 16th, 1932, and the day following a deed was made to the purchaser.

The Record Building & Loan Association of Baltimore City filed a petition against the trust company, trustee, on March 30th, 1932, and on June 7th, 1933, an amended petition, in which the Minber Corporation joined, praying an order to rescind the order ratifying the sale to the appellee on the ground that the award of the commissioners for opening streets was final and determinative of the rights of all parties interested in the property condemned, and that the mortgagee was thereafter without authority to sell the land condemned and the sale, therefore, was void and of no effect.

The case was submitted on an agreed statement of facts, and from an order dismissing the amended petition, the Record Building & Loan Association brings this appeal.

The appellant's chief concern seems to be the possible effect of the foreclosure on its mortgage, and the fear that, if the mortgagee's foreclosure of the first mortgage is allowed to stand, the second and third mortgages will be wiped out.

The power to open streets and to provide for condemnation of needed property is conferred by the City Charter, Code Pub. Loc. Laws, art. 4, sec. 6, subd. 26(a), from which it appears that the Legislature has fixed a time within which payment must be made for property so condemned. For losses, however, due to delay, either in abandoning a project or in paying the owners of property condemned, this court has decided that they may be compensated for such damages as they may suffer by unreasonable delay in abandonment or payment as the case may be. *Norris v. Baltimore,* 44 Md. 598, 607; *Black v. Baltimore,* 50 Md. 235; *Fitsnogle v. Western Maryland Ry. Co.,* 123 Md. 667, 674, 91 A. 831. In the case of *Wagner v. Bealmear & Son Co.,* 135 Md. 690, 109 A. 466, it was held that a delay of three and a half years was equivalent to an abandonment, but no question has been raised by either side of the city's right to pay and enter at any time.

There is some diversity of opinion as to when the title vests in the condemnor, some holding that it vests when the award becomes final; others, when the right of possession accrues, that is, when the compensation is paid. In the latter class is this state. "It has long been the settled law of Maryland, that both private and municipal corporations, when authorized to exercise the power of eminent domain, have the right to renounce the inquisition and select a more eligible route, or to wholly abandon the improvement or enterprise, at any time before actual payment of the amount assessed, either by commissioners or jury, and until that time no title to the property condemned vests in the corporations. * * * But when this sum is paid or tendered, the title vests." *Norris v. Baltimore,* 44 Md. 598, 604; see *Gardiner v. Baltimore,*

96 Md. 361, 382, 54 A. 85; *Wagner v. Bealmear & Son Co.,* 135 Md. 691, 109 A. 466.

Though the owner is not divested of his title merely by an award, he cannot by any kind of conveyance shake off the condemnation, and any conveyance which he or any one claiming through him may make is subject to the right of the condemnor, upon the payment of the award, to enter the property condemned. There is some difference of opinion as to who is entitled to an award when a conveyance is made after the award becomes final; some holding that it goes with the conveyance to the vendee, unless expressly made subject to the award; others that, without any reservation, it belongs to the vendor. The better rule seems to be that when possession is taken or the physical change in the property takes place the money should be payable to the then owners. An examination of these cases, however, shows that the decisions were of cases where the owner was the vendor. 10 *A. & E. Encyc. Law* (2nd Ed.), 1188. But we are not concerned with that.

Just what happens to the title of those interested in the award is aptly stated in *Gardiner v. Baltimore,* 96 Md. 361, 381, 54 A. 85, 87, where it is said: "Condemnation proceedings are proceedings *in rem,* and bind all parties interested in the *rem,* even though not technically parties to the proceeding. All questions of title to the *rem* are transferred to the money awarded, after a valid and final condemnation." In many jurisdictions it is necessary that all parties interested in the property and entitled to compensation be made parties to the proceeding, otherwise those omitted are not bound. "In those jurisdictions in which it is held that the mortgagee's interest can be divested without making him a party, his only remedy is against the fund and he may, by application to the court in which the proceedings are pending, or by bill in equity, subject the award to the payment of his debt." 2 *Lewis' Eminent Domain* (3d Ed.), sec. 896.

The rule as stated in *Gardiner v. Baltimore,* 96 Md. 381, 54 A. 85, 87, is that all persons interested in the property condemned are bound, "though not technically parties to the

proceeding," and the rule that a mortgagee is such an interested party and entitled to be paid out of the award, was applied in the case of *Hagerstown v. Groh,* 101 Md. 560, 563, 61 A. 467, 468, wherein this court said: "A condemnation is a proceeding at law, and at law the mortgagee is the owner of the property, even if equity does, for purposes, treat him as merely having a lien on the land. In our opinion, the appellee was an owner of a 'right or interest' in the condemned land within the meaning of the charter under which the proceedings were conducted, and was entitled to be compensated out of the damages awarded for the land to the extent of the value of his interest before the appellant took possession of the land." See *Bates v. Boston Elevated Railway,* 187 Mass. 328, 72 N. E. 1017.

It is therefore manifest that in this condemnation proceeding the land and every interest in it was condemned, and by the very terms of the award they were intended to be included in it, which was to "Ellis Stein and Goldie Stein, his wife, or such person or persons as may be legally entitled thereto," and the city may relieve itself from liability for conflicting claims by paying the award into court. Code Pub. Loc. Laws, art. 4, sec. 827.

The decisions are not uniform as to whether a mortgagee can foreclose at all after an award becomes final (note 58 *A. L. R.* 1536), but in view of the cases in this court, already cited, that the title of the condemnor does not vest until the compensation is paid, it seems to be settled in this state that the mortgagee can foreclose his mortgage at any time before payment of an award.

The record presents no evidence that the sale here sought to be set aside was not fairly made, nor any reason assigned except the fear that the entire award of $14,000 would be payable to the appellee as the purchaser at the mortgagee's sale. Inasmuch as that question, though argued, is not before us for decision, we express no opinion. It is a question which may and will arise if and when the city pays the award, and it can protect itself by paying the money into

court, when the purchaser and the mortgagees can have their rights and interests in the fund adjudicated. Code Pub. Loc. Laws, art. 4, sec. 827.

Deciding, as we do, that the mortgagee had the right to sell the mortgaged property, with no element of fraud, mistake, or surprise in the sale (*Whitlock Cordage Co. v. Hine,* 125 Md. 96, 93 A. 431), and none charged, the decree appealed from will be affirmed.

*Decree affirmed, with costs.*